Leroy **ELLISON** et al., Plaintiffs,

v.

**ROCK HILL PRINTING AND FINISH-ING COMPANY**, a corporation, et al., Defendants.

**Civ. A. No. 72–405.**

United States District Court, D. South Carolina, Rock Hill Division.

Aug. 17, 1972.

Ernest A. Finney, Jr., Sumter, S. C., Jonathan P. Wallas, Robert Belton, J. LeVonne Chambers, Charlotte, N. C., Jack Greenberg, Wm. Robinson, New York City, for plaintiffs.

James T. Irvin, Jr., Robert M. Ward, Rock Hill, S. C., J. R. Goldthwaite, Jr., Robert J. Martin, Jr., Atlanta, Ga., Patricia E. Eames, New York City, John Bolt Culbertson, Greenville, S. C., Betty Southard Murphy, Washington, D. C., for defendants.

## ORDER

HEMPHILL, District Judge.

This matter came to be heard by way of defendant International Association of Machinists and Aerospace Workers' (hereinafter "IAM") motion to dismiss for want of venue and for want of sufficient service. This is a suit in equity instituted on March 31, 1972, pursuant to Title VII of an Act of Congress known as "The Civil Rights Act of 1964." 42 U.S.C. § 2000e et seq. and for a declaratory judgment[1] as to the rights established under such legislation. Jurisdiction is also invoked pursuant to 28 U.S.C. §§ 1331 and 1343(4) and 42 U.S.C. § 1981. The plaintiffs have alleged that the defendants follow a policy and practice of discrimination in employment against blacks on account of their race and discrimination according to sex.

A hearing was held in Greenville (the court was conducting a two-week criminal term) on August 10, 1972, for the purpose of considering a number of motions pending in the case. Some of the motions were disposed of that day and other rulings were deferred until further discovery could be had. This order is directed only to IAM's motion to dismiss for lack of venue and for lack of sufficient service.

IAM is an unincorporated labor organization having its principal office and place of doing business at 1300 Connecticut Avenue, Washington, D. C. IAM contends that this court lacks venue and jurisdiction with respect to plaintiffs' claims against IAM. Plaintiffs, in response, contend that IAM by means of its contacts with Local 1779, an affiliate of IAM, and through the actions of Mr. George Wells, IAM's representative who services Local 1779 as well as other Machinists' local unions, transacts sufficient business within South Carolina and maintains sufficient contacts in South Carolina to be subject to suit in South Carolina.

George Wells[2], International Representative of IAM, and whose salary is paid by IAM regularly assists South Carolina locals, including Local 1779, in

---

1. 28 U.S.C. § 2201 and 2202.

2. The deposition of George Wells was taken by the plaintiff on June 28, 1972, and has subsequently been filed with the court.

contract negotiations and in the processing of grievances.

Mr. Wells stated in his deposition:

Q. How long have you been employed by that organization?

A. Since April 1, 1967.

Q. In what capacity?

A. As Grand Lodge Representative.

Q. What are your responsibilities as Grand Lodge Representative?

A. My responsibilities are to see that the local lodges comply with the constitution of the organization and to assist the local lodges in grievance matters and contract negotiations.

\*　　\*　　\*　　\*　　\*　　\*

Q. Do you work with local lodge 1779 out of Rock Hill, South Carolina?

A. Yes sir.

Q. What do you do with that local lodge?

A. I assist the local lodge in the handling of grievances and contract negotiations.

Q. How many contract negotiations have you participated in since 1967?

A. Three, I believe.

Q. To that local?

A. Three I believe for that local.

Q. Where did the negotiations take place?

A. The conference room of the company—the offices.

Q. At Rock Hill?

A. Yes, sir.

Q. Do you have any appreciation, Mr. Wells, of how many grievances you have handled for that local since 1967?

A. Quite a number, but I wouldn't even hazard a guess.

Q. Would it be more than fifty?

A. I don't know.

Q. Would it be more than twenty-five?

A. I would imagine so.

Q. Now, when you are handling the grievances for Local 1779, where do you do your work? Is it done in South Carolina, or is it done in North Carolina?

A. Well, it depends on what work I am doing on them. If I am attending a meeting with the company and the committee, I meet in South Carolina. If I am preparing for arbitration, I do it in North Carolina.

Q. Can you think of any other things that you do, Mr. Wells, for 1779, other than assist them with the grievances and assist them with the contract negotiations?

A. No, sir.

Q. Could you give me an estimate of the percentage of time that you spend in South Carolina for IAM?

A. I would imagine that until recently a fourth maybe of my working time would have been spent in South Carolina.

Q. Do you know whether or not Local Lodge 1779 has the authority to enter into a contract with Rock Hill without your authority or the authority of the International?

A. Yes, they do have that authority.

Q. Where does that authority flow from?

A. From the Constitution of the International Organization.

\*　　\*　　\*　　\*　　\*　　\*

Q. Do you know what dues are paid by members of Local 1779?

A. No, I don't.

Q. The amount that is?

A. No.

Q. Do you know whether the International received a portion of the dues paid by the members of Local 1779?

A. Yes, they do.

From Wells' deposition it is evident he spends substantial time and efforts conducting business for IAM in South Caro-

lina. He has participated in various contract talks between Local 1779 and the defendant Rock Hill Printing and Finishing Company and has signed various supplemental agreements and contracts on behalf and as a representative of IAM in South Carolina. Local 1779 cannot change its by-laws without the consent of IAM and it is uncontested that a portion of the dues collected by Local 1779 is forwarded to IAM.

The Constitution of the IAM contains detailed provisions wherein the IAM exercises control over Machinists' locals including Local 1779. For example, IAM's International President maintains the power to suspend local lodges. The IAM Constitution also includes detailed provisions to allow officers of local unions to participate in IAM's pension plans. Numerous provisions of the Constitution delineate procedures to be followed in the organization of locals, the election of local officers, and the day-to-day management of local business. The general effect of these numerous and far-pervading Constitutional provisions is to bring the influence and dominion of IAM into all significant daily business conducted by the IAM locals in South Carolina including Local 1779.

Finally, the contracts executed by IAM, Local 1779, and the defendant Company from 1960 to date clearly show IAM involvement in South Carolina. The contract dated December 10, 1960, which is apparently still the basic contract in effect subject to subsequent supplemental agreements, gives the address of Local 1779, International Association of Machinists, as having its principal office in Washington, D. C. which is the address of IAM, not Local 1779. In addition, each of the relevant contracts and supplemental agreements were signed by IAM International Representatives as representatives of IAM.

■ IAM contends that the court lacks venue pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e–5(f).

28 U.S.C. § 1391 provides that:

"(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law."

42 U.S.C. § 2000e–5(f) provides:

" . . . Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the plaintiff would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."

The United States District Court for the District of South Carolina is, as demonstrated by the pleadings, the district "in which the claim arose" in the language of 28 U.S.C. § 1391(b) and is the district "in which the unlawful employment practice is alleged to have been committed" and where the defendant can be "found" in the language of 42 U.S.C. § 2000e–5(f). Therefore, venue is properly placed.

■ Defendant IAM further contends that the District of South Carolina cannot entertain the suit for jurisdictional purposes and due to the fact that proper service was not had.[3] Plaintiffs aver

---

3. Service of summons in the case was attempted by a copy of the summons being served by the United States Marshal in the District of Columbia leaving a copy thereof with an officer of IAM.

that IAM is within the jurisdiction of this court pursuant to Section 10.2–803 of the South Carolina Code of Law which provides:

§ 10.2–803. Personal jurisdiction based upon conduct.—(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(a) transacting any business in this State;

(b) contracting to supply services or things in the State;

(c) commission of a tortious act in whole or in part in this State;

(d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State; or

(e) having an interest in, using, or possessing real property in this State; or

(f) contracting to insure any person, property or risk located within this State at the time of contracting; or

(g) entry into a contract to be performed in whole or in part by either party in this State; or

(h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him, and such action, if brought in this State, shall not be subject to the provisions of § 10–310 (3).

The court has no doubt that the facts as set forth above are sufficient in a constitutional sense to bring IAM within the jurisdiction of this district without out offending the due process clause of the Fourteenth Amendment. International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However the defendant IAM more seriously questions whether South Carolina's long-arm statute, § 10.2–803 of the South Carolina Code, extends the jurisdiction of the court as far as due process allows and whether this case properly comes within the scope of the statute even assuming the statute goes as far as due process allows.

To support its position IAM relies upon several recent cases which have rendered portions of § 10.2–803 in violation of the South Carolina Constitution. DeLoach v. Nash (opinion by Judge Rhodes in the Court of Common Pleas for Richland County, March 27, 1971); Byrd v. Melton (opinion by Judge Nicholson in the Court of Common Pleas for Richland County, July 14, 1971). Judge Chapman also wrote a very able opinion in the case of Tention v. Southern Pacific Railroad Company, 336 F.Supp. 25 (D.C.1972), wherein he held § 10.2–803(1)(c) and (d) violated the requirements of Article III, § 17 [4] of the Constitution of South Carolina. It should be noted that the above authorities refer only to § 10.2–803 (1)(c) and (d) and each court specifically stated that the ruling did not question or suggest the invalidity of any other part or portion of the South Carolina Commercial Code. The case at hand does not purport to come within subsection (1)(c) and (d) of the above cited statute and, therefore, the holding of the authorities are not pertinent to the motion under treatment except by persuasive analysis. It would appear to this court that the action herein would be placed within the scope of subsection (a) "Transacting any business in the State", (b) "Contracting to. supply services or

4. Article III,' Section 17 of the Constitution of South Carolina provides that "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

things in the State", or (g) "Entry into a contract to be performed in whole or in part by either party in this State", if § 10.2–803 is applicable at all.

There is no serious contention that (1)(a), (b), or (g) violate the South Carolina Constitution insofar as the subject being expressed in the title of the Act or resolution. The court notes that Judge Russell dealt at length with § 10.2–803(1)(g) in Deering Milliken Research Corp. v. Textured Fibres, Inc., 310 F.Supp. 491 (D.C., 1970), where he held that the subsection was valid under the Fourteenth Amendment to the United States Constitution and was also valid under Article III, Section 17 of the South Carolina Constitution. Referring to Section 10.2–803(1)(g), Judge Russell stated:

The section upon which plaintiff bases its claim of jurisdiction was enacted as a part of the Uniform Commercial Code as adopted in this State. The title to such Code as it was enacted by the South Carolina General Assembly described the legislation as "An Act To Be Known As The Uniform Commercial Code * * * Regulating Procedure, Evidence, And Damages In Certain Court Actions Involving Such Transactions, Contracts, Or Documents * * *." It included as a part of such Code, Section 10.2–803(1)(g), regulating manner of service and determining jurisdiction in this State "as to a cause of action arising from * * * entry into a contract to be performed in whole or in part by either party in this State".

It would seem that Section 10.2–803 (1)(g) is properly embraced in the language of the "title" of the Act of which it is a part. It is within the definition of "Procedure". Actually, method of service of process as a means of securing jurisdiction is included as an integral part of the Federal Rules of Civil Procedure (Rule 4), and is to be found in the procedural sections of the South Carolina Code (Sections 10–421 to 10–473, Code

of South Carolina, 1962). It must be observed that the Constitutional provision, relied on by the defendants for invalidation of the section in question, it has been repeatedly held, is not to be given a narrow construction but is to be construed "very liberally to the end that legislation shall not thereby be needlessly hampered and embarrassed". State ex rel. Ray v. Blease (1913) 95 S.C. 403, 414, 79 S.E. 247, 252. It "is complied with when the title expresses the general subject of legislation". Gasque, Inc. v. Nates, Commissioner (1938) 191 S.C. 271, 291, 2 S.E.2d 36, 45. Measured by these standards, Section 10–2–803(1) (g) which unquestionably deals with "procedure" does not offend the requirements of Section 17, Article III of the Constitution of South Carolina and is within "the general subject" of the legislation in question.

The only question remaining is whether or not the subject matter of this case comes within the purview of the Uniform Commercial Code. The Act is entitled:

An Act to be known as the Uniform Commercial Code, relating to certain commercial transactions in or regarding personal property and contracts and other documents concerning them, including sales, commercial paper, bank deposits and collections, letters of credit, bulk transfers, warehouse receipts, bills of lading, other documents of title, investment securities and secured transactions, including certain sales of accounts, chattel paper, and contract rights; providing for public notice to third parties in certain circumstances; regulating procedure, evidence and damages in certain court actions involving such transactions, contracts or documents; to make uniform the law with respect thereto; and repealing inconsistent legislation.

The facts as set forth hereinabove indicate that George Wells, IAM representative by means of a contract between IAM and Local 1779, services that Local in various ways. He assists in contract negotiations and the processing of griev-

ances; he has signed agreements as representative of IAM. The court is of the opinion that these actions are within the scope of Section 10.2–803 of the South Carolina Code of Laws. The complaint alleges that defendant IAM is the superior Union to Local 1779. These facts herein constitute a prima facie showing that defendant IAM was a party to a contract to supply services in this state and was transacting business in this state which precludes summary dismissal of IAM for lack of personal jurisdiction.

■ Having determined that Section 10.2–803 provides jurisdiction in this case, one need only look at the subsequent sections to ascertain that service of process was proper. Rule 4(d)(7) of the Federal Rules of Civil Procedure authorizes service upon an unincorporated association "in the manner prescribed by the law of the state in which the district court is held for service of summons." Sections 10.2–804 to 10.2–808 sets forth the rules for service upon non-resident defendants. The personal service effected by the plaintiffs on IAM is undoubtedly sufficient under Section 10.2–806 [5] of the South Carolina Code of Laws. Service in Federal Courts by a United States Marshal is proper. Since personal service was made, the defendant IAM has no ground to complain of lack of notice of this action.

Defendant IAM's motion to dismiss for lack of venue, jurisdiction, and proper service is hereby denied.

And it is so ordered.

5. § 10.2–806. Manner and proof of service.—(1) When the law of this State authorizes service outside this State, the service, when reasonably calculated to give actual notice, may be made:

(a) by personal delivery in the manner prescribed for service within the State;

(b) in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction;

(c) by any form of mail addressed to the person to be served and requiring a signed receipt; or