**Jimmy L. STANLEY, for himself and others similarly situated,**

v.

**LOCAL 926 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS OF THE AFL–CIO et al.**

**Civ. A. No. 16321.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Jan. 30, 1973.

Moore, Alexander & Rindskopf, Atlanta, Ga., Jack Greenberg, William L. Robinson and Morris Baller, New York City, for plaintiff.

Adair, Goldthwaite, Stanford & Daniels, Atlanta, Ga., for Unions.

Arthur K. Bolton, Atty. Gen., Donald A. Langham, Asst. Atty. Gen., Atlanta, Ga., for the State.

## ORDER

EDENFIELD, District Judge.

Plaintiff in this class action brought under 42 U.S.C. §§ 1981, 1983, and 2000e (1970) alleges that he was denied job placement by defendant Local 926 of the International Union of Operating Engineers, AFL–CIO ["Local 926"] after he successfully completed a training program set up by defendants solely because he was black. He seeks declaratory and injunctive relief on behalf of the class, and he seeks back pay, immediate employment, restoration of seniority rights, costs, and reasonable attorney's fees on his own behalf. The matter is before the court on motion of defendant International Union of Operating Engineers, AFL–CIO ["International"] to be dismissed from the suit and motion of defendant Georgia Department of Labor for summary judgment.

Pursuant to the Manpower Development and Training Act of 1962, 42 U.S.C. § 2571 et seq. (1970), defendant International entered into a "National MDTA-OJT Contract" with the United States Department of Labor and the United States Department of Health, Education and Welfare to provide new and better skills for unemployed and underemployed persons in the construction industry through a formal training plan. The national contract provided that the International could subcontract with other organizations to provide the training, and on February 19, 1971 defendant International and defendant Local 926 entered into such a cost-reimbursement type subcontract whereby Local 926 agreed to operate a training program in the Northern District of Georgia. Attached to the subcontract was an "Assurance of Compliance" executed by Local 926 in which Local 926 specifically committed itself to take all measures necessary to guarantee nondiscrimination in the operation of the training program. The subcontract also incorporated by reference all provisions of the national prime contracts between the International and the Government. One

such provision, outlined in Section 14 of the "General Provisions for Cost-Reimbursement Type Contracts", bound the International to take "affirmative action" to ensure that trainees were not subjected to any discrimination and to enforce detailed nondiscrimination clauses which had to be included in all its subcontracts.

The training program devised by Local 926 was designed both for underemployed operating engineers who had a work history of limited or outdated skills and for unemployed individuals who had limited or no skills. Recruitment for the former or "skills conversion" course was restricted to individuals with a background in the construction industry who were selected for training by Local 926. Recruitment for the latter or "entry level" course was coordinated with the Urban League and other community organizations with priority given to members of minority groups.

The "entry level" course consisted first of orientation and then eight weeks of classroom instruction and vestibule training. Those trainees who successfully completed this phase of the course were supposed to be dispatched to jobs on the equipment or in the classification for which they qualified, subject to the provisions of existing collective bargaining agreements and the requirements of the industry, in order to get 18 weeks of on-the-job training. It was intended that successful trainees would compete and qualify for existing apprenticeship programs and, subsequently, union membership.

The Georgia Department of Labor, which was not a party to any of the contracts or subcontracts referred to above, participated in the training program only to the extent of certifying that a need for training existed in the occupation involved, completing trainee enrollment forms, determining that trainees met eligibility standards, and paying trainees a training allowance during the eight weeks of classroom instruction and vestibule training. This was done under a directive from the United States Department of Labor pursuant to the Manpower Development and Training Act.

According to the allegations of the complaint, plaintiff applied for and was accepted in the "entry level" course and successfully completed the classroom instruction and vestibule training. He received a certificate to this effect on June 18, 1971. The following Monday, June 21, plaintiff reported to the hiring hall of Local 926 and was the first person to sign the register indicating availability for employment. He reported to the hiring hall daily during the entire month of July, 1971. Plaintiff, however, was never dispatched to a job for on-the-job training. A number of whites, on the other hand, including many who had participated with plaintiff in the training program and who signed the hiring hall register after plaintiff, were assigned to jobs during this period. In August, plaintiff filed a charge of discrimination against Local 926 and the International with the Equal Employment Opportunity Commission ["EEOC"]. On March 8, 1972, the EEOC informed plaintiff of his right to institute a civil action within 30 days, and this suit followed.

The International, which is located in Washington, D. C., moves to be dismissed on the ground that this court lacks personal jurisdiction over it. Since there is no federal statutory provision which informs a district court when personal jurisdiction may be had over individuals and entities which are not located within the court's territorial jurisdiction, it is usual for the court's jurisdiction to be tested by a motion attacking the service of process, as International does in this case. The court must determine in such cases whether it is both statutorily and constitutionally permissible to serve the foreigner. Gkiafis v. Steamship Yiosonas, 342 F.2d 546, 548 (4th Cir. 1965).

Under Rule 4, Fed.R.Civ.P., a summons and complaint must be served upon all defendants in a civil action. Rule 4(d) provides several methods of

federal service and, in Rule 4(d)(7), incorporates all state methods if service is to be made upon individuals other than an infant or incompetent person and domestic and foreign corporations, partnerships, and unincorporated associations. However, Rule 4(f) limits all such service of process to the territorial limits of the state in which the district court is held, unless some federal statute or rule authorizes extra-territorial service. There is no federal statute which authorizes extra-territorial service in the present case. Nevertheless, Georgia has a "long-arm" statute, Ga.Code Ann. § 24–113.1 (1971),[1] and Rule 4(e), Fed. R.Civ.P., does authorize extra-territorial service "under the circumstances and in the manner prescribed" by a state "long-arm" statute. Thus in this federal civil rights case the court must look to Georgia law to determine, first, if service upon the International was statutorily permissible.[2]

Under Ga.Code Ann. § 24–115 (1971), whoever is subject to the jurisdiction of the courts of Georgia under § 24–113.1 may be served with a summons outside Georgia in the same manner service is made within the state by any person authorized to make service by the laws of the state, territory, possession, or country in which service is to be made, or by any qualified attorney, solicitor, barrister, or equivalent person. Under Ga.Code Ann. § 24–117 (1971) an unincorporated association such as the International is included within the term "nonresident" as that term is used in § 24–113.1 and personal service upon a nonresident by an authorized individual is sufficient under Ga.Code Ann. § 24–1105 (1971) and Ga.Code Ann. § 81A–104(d)(7), (f) (1972). In the present case service upon the International was made personally by a United States marshal, so that the manner of service in the present case was proper under applicable Georgia law. Bituminous Casualty Corp. v. R. D. C., Inc., 334 F.Supp. 1163, 1164 (N.D.Ga.1971). However, such service may be considered statutorily permissible only if the International was subject to jurisdiction under § 24–113.1.

The resolution of this question has been made relatively easy by earlier decisions of this court. In Marival, Inc. v. Planes, Inc., 302 F.Supp. 201 (N.D.Ga. 1969), and again in Griffin v. Air South, Inc., 324 F.Supp. 1284 (N.D.Ga.

1. This statute provides the following:
"Personal jurisdiction over nonresidents of State.—A court of this State may exercise personal jurisdiction over any non-resident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:
"(a) Transacts any business within this State; or
"(b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or
"(c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; or
"(d) Owns, uses or possesses any real property situated within this State."

2. Many courts and commentators have recognized the anomaly presented when a federal court, deciding a federal question, must look to state statutory procedure to determine its own jurisdiction. E. g., Hartley v. Sioux City & New Orleans Barge Lines, Inc., 379 F.2d 354, 356, n.2 (3d Cir. 1967). It is true that in Lone Star Package Car Co. v. Baltimore & Ohio R. R., 212 F.2d 147 (5th Cir. 1954), the Fifth Circuit held that in federal question cases a district court's jurisdiction over a foreign corporation should be limited only by the Due Process Clause of the Fifth Amendment. But as has been shown, Gkiafis v. Steamship Yiosonas, supra, 549, of 342 F.2d in Lone Star Package service was made on an agent of the foreign corporation who was present in the forum state under the federal method of service provided by Rule 4(d)(3). In the present case plaintiff had neither this nor any other federal method of service available to him. Accordingly, this court, like others, will have to live with the anomaly.

1971), this court held that the Georgia "long-arm" statute, § 24–113.1, is coterminus with the Due Process Clause. *Cf.* Coe & Payne v. Wood Mosaic, Inc., 195 S.E.2d 399 (Sup.Ct. of Ga.1973). Thus service upon the International in this case was authorized by Georgia law if the assertion of personal jurisdiction over the International was constitutionally permissible.

■ The constitutional test to be applied in this case is whether the International had "certain minimum contacts with [the forum state—in this case, Georgia] [3] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The execution of even a single contract may, in certain circumstances, satisfy the "minimum contacts" test. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Gkiafis v. Steamship Yiosonas, *supra*; Marival, Inc. v. Planes, Inc., *supra*. Here, the subcontract between the International and Local 926 was to be performed in whole within the Northern District of Georgia. The subcontract incorporated provisions of the contracts between the International and the Government which obligated the International to take "affirmative action" to ensure that persons participating in the training program run by Local 926 would not be subjected to any discrimination and, if necessary, to impose sanctions upon Local 926 for failure to comply with the detailed nondiscrimination clauses contained in the subcontract. The contracts, taken together, may be read as creating an enforceable right of nondiscrimination in the trainees participating in the Local 926 training program as third-party "donee" beneficiaries. *See* 4 A. Corbin, Contracts §§ 782, 805 (1951). Since plaintiff alleges he was discriminated against as a trainee in the program run by Local 926, he might very well have brought suit against the International and Local 926 for breach of contract as a donee beneficiary. Had he done this, his "cause of action" would have arisen directly from the contract, and that, coupled with the International's substantial contractual obligations within Georgia, would have enabled the court to easily resolve any constitutional problems connected with the assertion of jurisdiction over the International.

■ As it happens, plaintiff did not sue the International for breach of contract. This, however, does not affect the nature of the International's contacts with this forum. It contracted to establish a training program within this district and it undertook detailed contractual obligations within this district with respect to the manner in which that program was to be conducted. These contacts with the forum are sufficient to allow the court to conclude that the assertion of personal jurisdiction over the International would not offend "traditional notions of fair play and substantial justice." *See* Ellison v. Rock Hill Printing & Finishing Co., 347 F. Supp. 436 (D.S.C.1972); Osborne v. McCall Printing Co., 4 CCH Empl.Prac. Dec. ¶ 7757 (S.D.Ohio 1972).

■ Turning to defendant Georgia Department of Labor's motion for summary judgment, the court notes that plaintiff's allegation of discrimination is based on his failure to be placed for on-the-job training under the training program and his consequent failure to find employment in the construction industry. The Georgia Department of Labor was not a party to any of the contracts

---

3. At least one court has indicated its belief that the proper inquiry to be made in a federal court where the suit is based on a federally created right is whether the defendant has certain minimal contacts with the United States as a whole, rather than with the forum state. Edward J. Moriarity & Co. v. General Tire & Rubber Co., 289 F.Supp. 381, 390 (S.D.Ohio 1967). However appealing this approach may be, this court agrees with the holding of that case that the terms of Rule 4(e) dictate a test based on minimal contacts with the forum state. *But see* Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L.Rev. 1121, 1123–1125, n.6 (1966).

referred to in this order and both the directives issued by the United States Department of Labor and the uncontradicted affidavit submitted by the Georgia Department of Labor make it absolutely clear that the relatively minor role played by the Georgia Department of Labor in this training program ended with the classroom instruction and vestibule training stage. The Georgia Department of Labor had absolutely no connection with placement for on-the-job training or with ultimate job placement. Plaintiff has not attacked any of the activities in the program with which the Georgia Department of Labor was connected. In fact, plaintiff has not filed a response or indicated any opposition to the Georgia Department of Labor's motion. For all these reasons the motion will be granted. Rule 56, Fed.R.Civ.P.

For the foregoing reasons the motion to dismiss filed by defendant International Union of Operating Engineers, AFL–CIO, is denied, and the motion for summary judgment filed by defendant Georgia Department of Labor is granted.

It is so ordered.