**SECURITIES AND EXCHANGE COMMISSION**

v.

**C. V. MYERS, doing business as Myers' Finance Review.**

**Civ. A. No. 19244.**

United States District Court
D. Maryland.

May 15, 1968.

---

Burton H. Finkelstein, Errol M. Stone, Arthur F. Mathews, Washington, D. C., Stephen H. Sachs, U. S. Atty., Alan B. Lipson, Asst. U. S. Atty., Baltimore, Md., for S.E.C.

C. V. Myers in pro. per.

NORTHROP, District Judge,

The Securities and Exchange Commission (hereinafter referred to as the Commission) seeks to enjoin C. V. Myers, doing business as Myers' Finance Review (hereinafter referred to as the Review), from engaging in acts and practices which constitute, and will constitute, violations of the registration requirements of Section 203 of the Investment Advisers Act of 1940 (hereinafter referred to as the Act), 15 U.S.C.A. § 80b–3.

This court issued an order to show cause why a preliminary and final injunction enjoining defendant, a Canadian citizen, from conducting his unregistered investment-advising business in the United States should not be granted as prayed for in the complaint. Defendant responded by letter dated March 11, 1968, which letter this court has accepted and which has been filed as defendant's answer to the show cause order. Therein the defendant requested that "this action by the SEC be labelled vexatious and frivolous, and that it be summarily dismissed." Several contentions are raised by the defendant as grounds for dismissal, viz:

1. That the defendant has not made use of the United States mail;

2. That the Act cannot be applied to the defendant, a Canadian citizen; and therefore, the court has no jurisdiction; and

3. That the court has no authority to order defendant to appear in this district and to defend himself since his actions are legal under Canadian law.

Generally, the contentions raised go to the jurisdiction of the court over the subject matter of the complaint and the jurisdiction of the court over the person of the defendant. With respect to subject-matter jurisdiction, Section 214 of the Act, 15 U.S.C.A. § 80b–14, provides that the district courts have jurisdiction of violations of the Act and of all suits in equity to enjoin any violation thereof.

Section 209, 15 U.S.C.A. § 80b–9 governs the enforcement of the provisions of the Act, and in part provides that

"Whenever it shall appear to the Commission that any person has engaged, is engaged, or is about to engage in any act or practice constituting a violation of any provision of this title * * * it may in its discretion bring an action in the proper district court of the United States * * * to enjoin such acts or practices and to enforce compliance with this title * * *. Upon a showing that such person has engaged, is engaged, or is about to engage in any such act or practice * * * a permanent or temporary injunction or decree or restraining order shall be granted without bond. * * *"

The Commission has charged that the defendant has in the past, is presently, and is about to violate the basic registration requirement provision of the Act, Section 203(a), 15 U.S.C.A. § 80b–3 (a), which makes it unlawful

"for any investment adviser, unless registered under this section, to make use of the mails or any means or instrumentalities of interstate commerce in connection with his or its business as an investment adviser."

This court has subject matter jurisdiction if the following questions are answered in the affirmative: Is the defendant an "investment adviser" as defined in the Act? If so, has he made use of the mails or the facilities of interstate commerce in connection with his business of investment advising?

"Investment adviser" is broadly defined as meaning

"any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business,

issues or promulgates analyses or reports concerning securities * * *."

Section 202(a) (11), 15 U.S.C.A. § 80b–2(a) (11). The Commission has filed with the court copies of the Review published by the defendant and it is apparent, and the defendant has not disputed, that through this Review he advises subscribers as to the advisability of investing in particular securities and generally offers analyses and reports on the securities business.

■ The thrust of defendant's argument is that granting the above fact, his activities, as presently conducted, are not in contravention to any law of his domicile, the Dominion of Canada, and thus to force him to submit to United States regulatory schemes is an unlawful assertion by this country of regulatory jurisdiction over foreign commercial activities. This categorization of the present attempt to enjoin defendant's activities is erroneous and without validity. The general purpose of the Act is to protect the *United States* investing public from investment advisers who engage in fraudulent and deceitful practices. See, Congressional and Administrative News (2d Session 1960) p. 3502. While Congress has no power to regulate commerce within the Dominion of Canada, it does have the power to regulate commerce "with foreign Nations, and among the several States * * *." Const. art. 1, § 8, cl. 3. And, while the Act is presumed to apply generally only to activities within the territorial United States, Cf. Ferraioli v. Cantor, 259 F.Supp. 842, 845 (S.D.N.Y.1966), in its broad context it has, like all regulatory acts, application to those activities which have a substantial effect on commerce between the states or between the United States and foreign countries. Cf. Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 641 (2d Cir. 1956).

■ For the present case, therefore, it is not sufficient that it be demonstrated that defendant has conducted a business of investment advising. The necessary element which subjects a non-domiciliary to regulation under the Act is the carrying on of a business in this country. Thus, insofar as defendant has conducted a "business" of investment counseling in this country he is subject to the registration requirement of the Act, if it be found that he has used the mails and the facilities of interstate commerce in connection therewith.

The Commission has shown that the defendant has in fact carried on a business in this country. It is not disputed by the defendant that his past activities have not been sporadic or incidental engagements in this country. By affidavit, Errol Stone, an attorney in the Division of Trading and Markets of the Commission stated that

"[The] Commission received a letter from the Alberta Securities Commission enclosing a memorandum from C. T. Ross, investigator, Calgary, Alberta, stating that on March 11, 1968 he and Mr. Price had visited C. V. Myers and had secured from his files the names and addresses of 25 American subscribers to Myers' Finance Review."

The list of American subscribers is filed as an exhibit and reveals that domestic subscribers to the Review live in twenty-five different cities in five states. Besides actual subscribers to the Review, the record is replete with examples of solicitations from the defendant to various individuals in various parts of this country for subscriptions to the Review. In assessing whether defendant has carried on a business in this country the solicitation of clients or subscribers is particulary relevant for the solicitation of new business is an integral part of the activity of an investment adviser. And it is not important that the defendant was not always successful in his efforts to obtain clients. See, II Loss, Securities Regulation (2d ed. 1961) at 1397 n. 15.

■ It appears that there is ample evidence to support the contention that defendant has engaged in the business of investment advising in this country. And defendant's admission that he will continue to "infiltrate from the north" by sending thousands of letters into this country supports the Commission's allegation that the defendant will continue to carry on his business in this country without complying with the provisions of the Act.

Defendant alleges, however, that he has not made use of the United States mail, and thus the court has no jurisdiction over the complaint. He states that:

"I have not approached a United States post office or postal service; have not purchased, borrowed or used a United States postage stamp. Residing and being a citizen of Canada I have used the Canadian mails, employing facilities made available to all Canadians. If anyone has used the United States mail it is the Dominion of Canada itself, and the United States postal authorities themselves. The Dominion of Canada has delivered unto the postal authorities of the United States the letters which I have lawfully deposited in the Canadian Post Office Building."

This argument is specious. Although defendant deposited his materials in the Canadian mails, the addresses were within the United States. The only method by which this material could be transmitted to the United States from Canada was through the United States mail and the facilities thereof. The Act forbids the use of the mails or any means or instrumentality of interstate commerce by an unregistered investment adviser in connection with his business. In Section 202(a) (10), 15 U.S.C.A. § 80b–2(10) "interstate commerce" is defined as

"trade, commerce, transportation or communication among the several States, or *between any foreign country and any State*, or between any State and any place or ship outside thereof." [Emphasis supplied]

Defendant's overly restricted interpretation of "interstate commerce" and "mails" is insupportable. Even if it were assumed that the defendant himself did not *directly* utilize the mails of the United States, he *indirectly* made use of the mails of this country and utilized the facilities of interstate commerce in his business in that it has been, and is, the only way in which residents of this country could possibly send their subscriptions to the Review to the defendant in Canada. This court does not interpret the Act to mean that it is necessary to show that the defendant deposited material in the mails or even that the defendant personally made use of the facilities of interstate commerce. All that is required is that the utilization of such instrumentalities of communication and trade be a part of his business. And it is sufficient that defendant indirectly utilized the mails in connection with his business by receiving subscriptions from United States residents through the mail.

■ Regulatory statutes such as the Act should properly be construed to provide the widest possible protection consistent with legislative purpose and the power of Congress. Restricted interpretations of the Act, as argued by the defendant, would substantially limit the protection afforded the investing public. And it is to be noted that under other securities acts the use of the mails may be entirely incidental, or used in any manner. See generally, III Loss, Securities Regulation (2d ed. 1961) at 1521 and cases cited therein.

■ Directly or indirectly the defendant has made use of the mails and instrumentalities of commerce and the facilities of communication in interstate commerce in connection with his United States investment-advising business. Consequently, this court has jurisdiction of the subject matter complained of.

The jurisdiction of this court over the person of the defendant is tested indirectly by an attack on the service of

process. Gkiafis v. Steamship Yiosonas, 342 F.2d 546, 549 (4th Cir. 1965), and defendant's objection to the assertion of personal jurisdiction is so construed.

Section 214 of the Act, 15 U.S.C.A. § 80b–14 governs venue and service of process in the enforcement of the Act. It provides in part as follows:

"Any suit or action to enjoin any violation of this title * * * may be brought in any such district [wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is an inhabitant or transacts business, and process in such cases may be served in any district of which the defendant is an inhabitant or transacts business or wherever the defendant may be found. * * * *"

■ Venue is properly laid in this district for a violation of the Act occurred here when the defendant solicited business here. See Affidavit of James E. Gutman. And from defendant's admission of contemplated future violations in sending thousands of his solicitations throughout this country it is apparent that defendant is about to engage in activities in derogation of the Act in this country and in this district with increasing intensity.

Service of process was made by personal delivery of a copy of the complaint, show cause order, and exhibits to the defendant in Calgary, Alberta, Canada, where the defendant conducts his business, in accordance with the provisions of the Federal Rules of Civil Procedure. More specifically, Rule 4(e) provides that

"Whenever a statute of the United States * * * provides for service of a summons * * * upon a party not an inhabitant of or found within the state in which the district court is held * * * service may be made under the circumstances and in the manner prescribed by the statute * * * or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule."

As pointed out above, Section 214 of the Act, 15 U.S.C.A. § 80b–14, provides that service may be made wherever the defendant is found, transacts business, or is an inhabitant. And Rule 4(i) (1), F.R.Civ.P., provides for personal delivery.

Although no case has been brought to the court's attention which specifically holds that Section 214 authorizes service without the United States or only in any district within the United States, similar statutory language in other securities acts has been held to so allow. Thus, in the Securities and Exchange Commission v. VTR, Incorporated, 39 F.R.D. 19, 21 (S.D.N.Y.1966), the court held that service, as completed here, was effective as against a foreign domiciliary under Section 22(a) of the Securities Act of 1933, 15 U.S.C.A. § 77v(a), which provides for service "wherever the defendant may be found." Accord, Securities and Exchange Commission v. Texas Gulf Sulphur Co., 258 F.Supp. 262 (S.D.N.Y. 1966); Ferraioli v. Cantor, supra; Securities and Exchange Commission v. Briggs, 234 F.Supp. 618 (N.D.Ohio 1964). The Advisory Committee's Note to the 1963 revision of the Rules of Civil Procedure states that the language contained in the other securities acts providing for service "wherever the defendant may be found" was phrased "in such terms to warrant the interpretation that service abroad is permissible." 31 F.R.D. 627, 630 (1963). As for the Investment Advisers Act, similar considerations are applicable warranting the holding of permissible service abroad under Section 214, 15 U.S.C.A. § 80b–14.

■ As noted by the court in *VTR*, the mere juggling of the Federal Rules does not provide the complete answer to the question of whether personal jurisdiction can properly be exercised as against nonresident foreigners. For the assertion of jurisdiction over nonresidents by the district courts considering federal questions is limited by the due-process clause of the Fifth Amendment. This limitation on the exercise of jurisdiction is that the forum must have suf-

ficient minimum contacts such that the maintenance of suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). And the "fairness of jurisdiction" is applicable to foreign parties as it is to citizens of this country. United States v. Montreal Trust Co., 35 F.R.D. 216 (S.D.N.Y.1964).

The analysis of the court in *International Shoe* was directed towards the totality of the circumstances in the particular case, which included an assessment not only of the quantity of the contacts between the defendant and the forum but also the quality of the nexus. With respect to the former, defendant's past, present, and contemplated unregistered solicitation of subscriptions to his review are clearly substantial, quantitatively. With respect to the latter, the nature of the activity complained of is one which has been subject to extensive and rigid regulatory control. It is an activity which properly can be said is treated as exceptional and subject to special regulation. As such, it provides grounds for the exercise of jurisdiction. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The defendant's nexus with this country and with this district is not accidental. Rather, the history of defendant's activities shows without question that he purposely availed himself of the privilege of conducting his investment-advising business in this country with all the benefits and rewards which flow therefrom, while at the same time attempting to escape and evade the restrictions applicable to all those similarly situated and those similarly engaged in such a business in this country. It should be noted that there is no indication that the requested injunction would subject the defendant to any risk of liability or danger of penalty in his domicile. As pointed out by the Commission, the requested injunction would merely require defendant to register with the Commission if he wishes to conduct his business in this country through the use of the mails and the facilities of interstate commerce, or cease therefrom.

See Fontaine v. Securities and Exchange Commission, 259 F.Supp. 880, 890 (D.P.R.1966) where that court stated:

"[F]oreign business operations which have an effect in the United States may, under appropriate circumstances, be subject to applicable United States law." citing, Timken Roller Bearing Co. v. United States, 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199 (1951); Steele v. Bulova Watch Co., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252 (1952); United States v. Aluminum Co. of America, 148 F.2d 416 (2d Cir. 1945).

And it further stated:

"IOS must decide whether or not it wishes to continue to do business in the United States. If IOS wishes to do so through the use of the mails and facilities of interstate commerce, it must be willing to comply fully with United States law." 259 F.Supp. at 891.

There would seem to be no legal bar precluding personal jurisdiction over the defendant.

While this court may not have a discernible "physical power" over the defendant, it does have subject-matter jurisdiction over the complaint and personal jurisdiction over the defendant. But the Commission seeks injunctive relief and this defendant would appear to be beyond the reach of this court to enforce its decree directly upon him.

This apparent lack of "physical power", the inability to resort to contempt procedures to enforce an injunction, while it gives pause to a court in its determination to grant it, must be measured against the harm being done by the perpetrator and the indirect application of that injunction which affects his capability to carry out his violative intention.

In the *VTR* case the Commission obtained a civil injunction against foreign nationals who, while acting abroad,

caused the selling of large quantities of unregistered stock on the stock exchanges in New York. The *VTR* case and other similar cases are distinguishable from the present case in that an injunction against the seller of unregistered stock on the national exchanges effectively enjoins not only the seller, wherever he might be or transact business, but, practically speaking, enjoins his domestic agents and brokers and the stock exchanges themselves. Still, this court has no way of knowing at this time what person or persons will, in the future, assist the defendant or be associated with him within the United States.

■ As pointed out in 43 C.J.S. Injunctions § 263 a (1945):

"In general one not a party to the suit or served with the injunction and who has no connection of any character with those bound by it, and who acts independent of them, cannot be punished for contempt for a breach of the injunction, and in such cases there is no technical 'breach' or 'violation' of the injunction in the well recognized sense of the terms as applicable to the parties to the injunction suit. However, such a person, like other members of the public, is bound to observe the restrictions of the injunction, when known, to the extent that they must not aid or abet its violation by others nor set the known command of the court at defiance by interference with or the obstruction of the administration of justice * * *."

This court has no crystal ball which presently enables it to determine in advance the future collateral effectiveness of an injunction in thwarting continued purposeful violations by the defendant. However, the protection of the American investing public against depredations by foreign nationals must be implemented by whatever tools are available, hopefully with more rather than less effectiveness.

■ Despite the defendant's avowed intention to ignore the order of this court, the tangential effect of an injunction in scotching his scheme warrants its issuance. Besides, it is not without reason to expect that concomitant action by the Canadian government in the interest of reciprocity might reach him directly.