**HONEYWELL INC., Plaintiff,**

v.

**METZ APPARATEWERKE et al.,**
**Defendants.**

**No. 71 C 515.**

United States District Court,
N. D. Illinois, E. D.
Sept. 6, 1972.

S. W. Witcoff, D. D. Allegretti and J. J. Held, Jr., Molinare, Allegretti, Newitt & Witcoff, Chicago, Ill., for plaintiff.

C. J. Fleming, McDougall, Hersh & Scott, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on defendant Metz Apparatewerke's motion to dismiss for lack of jurisdiction over the person pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure or, in the alternative, to dismiss for improper venue pursuant to Rule 12(b)(3).

Plaintiff Honeywell Inc. ("Honeywell"), a Delaware corporation with its principal place of business in Illinois, is the owner of the entire right, title and interest in and to United States Letters Patent No. 3,519,879 ("the '879 patent") and United States Reissue Letters Patent No. 26,999 ("the '999 patent"). Defendant Metz Apparatewerke ("Metz") is a corporation organized and existing under the laws of the Federal Republic of Germany; defendant Ehrenreich Photo-Optical Industries, Inc. ("Ehrenreich") is a New York corporation; defendant Ehrenreich Photo-Optical Industries of Illinois, Inc. ("Ehrenreich of Illinois") is an Illinois corporation; and defendant Bass Camera Company ("Bass") is an Illinois corporation. Honeywell alleges that all of the defendants are infringing the '879 and '999 patents. As the instant case arises under the patent laws of the United States, this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1338(a).

■ Honeywell alleges that venue as to Metz is proper pursuant to 28 U.S.C. § 1400(b), the venue statute relating to patent infringement suits, and 28 U.S.C. § 1391(d), the venue statute relating to aliens. At the time the instant motion was briefed, there was considerable controversy over whether section 1400(b) was the exclusive venue statute in patent infringement suits or whether section 1391(d) was also applicable to patent suits where a defendant was an alien. Any doubts about this matter were cleared up by the Supreme Court's recent decision in Brunette Machine Works, Ltd. v. Kockum Industries, Inc., 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (June 7, 1972). In that case, the Court unanimously held that section 1391(d), which provides that "an alien may be sued in any district", applies to patent infringement suits where a defendant is an alien. Accordingly, Metz's motion to dismiss for improper venue will be denied.

Totally separate from the issue of proper venue is the issue of whether this Court has *in personam* jurisdiction over Metz. There are two possible bases for such jurisdiction: (1) sufficient

minimum contacts by Metz with the forum state and (2) activities by Metz which make it amenable to process pursuant to Illinois' "long-arm" statute. Each of these bases will be considered separately.

## I. DOES METZ HAVE SUFFICIENT MINIMUM CONTACTS WITH THE STATE OF ILLINOIS?

In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court stated:

[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' Id. at 316, 66 S.Ct. at 158.

Rule 4(d)(3) of the Federal Rules of Civil Procedure provides that service of process can be made:

Upon a . . . foreign corporation . . ., by delivering a copy of the summons and of the complaint to an officer, a managing or general agent . . . .

In the instant suit, Honeywell attempted to serve Metz with process by serving Abe W. Paulson ("Paulson"), branch manager of Ehrenreich of Illinois, and by mailing a copy of the summons and complaint to Metz in Germany. The issue the Court must resolve, therefore, is whether Ehrenreich of Illinois is an agent of Metz for the purpose of receiving service of process or whether it is an independent purchaser of Metz's products. If Ehrenreich of Illinois is held to be the former, Honeywell's service on Metz is valid; however, if it is held to be the latter, Metz will not have had sufficient minimum contacts with Illinois so as to warrant *in personam* jurisdiction.

The following are relevant uncontroverted facts: Metz manufactures the accused devices in Germany. Pursuant to an agreement entered into on August 24, 1970 ["Agreement"], Metz appointed Ehrenreich to be the exclusive distributor in the United States of the accused devices.

The Agreement provides that:

[Ehrenreich] buys and sells in its own name and for its own account. Accordingly it deals both with Metz and the customer as an independent trader. It shall bear all arising costs and expenses itself.

The Agreement further provides that:

[Ehrenreich] shall bear all costs arising from f. o. b. German seaport or German Border onwards and all foreign charges including insurance from Fuerth [Germany]. The risk of transportation from Fuerth or the place of manufacture shall be borne by [Ehrenreich].

The Agreement also provides that Ehrenreich is not authorized to represent Metz in legal transactions.

Honeywell notes that the Agreement contains the following provision:

After sales service and warranty repairs will be at [Ehrenreich's] expense. As indemnification for these services and the spare parts needed including possible warranty claims [Ehrenreich] shall be credited 3% of the invoice net value of the electronic flash guns purchased from Metz.

In addition, Honeywell notes, the Agreement requires Metz to support Ehrenreich's sales efforts by providing leaflets and publicity material to Ehrenreich. Honeywell has attached copies of some of these leaflets as an exhibit to the instant motion. The leaflets disclose that the advertising is done by "Metz division/Ehrenreich Photo-Optical Industries, Inc., Garden City, N.Y. 11530. Other offices in Chicago, Los Angeles, San Francisco and Silver Spring, Md." Further, the accused device's warranty card is preaddressed to Ehrenreich in Garden City, New York,—"Attention: Metz Flash Service."

Metz attempts to explain away the usage of the name Metz by Ehrenreich by presenting to the Court an "Agreement Regarding Trademarks" ["Trademark Agreement"]. Pursuant to this Trademark Agreement, Metz assigned to Ehrenreich:

> . . . the entire right, title, and interest in and throughout the United States · of America, in and to the trademarks METZ and MECABLITZ and MECATWIN . . . and the good will of said trademarks.

> \* \* \* \* \* \*

> Ehrenreich, as owner of said trademarks in the United States . . . shall have the right to use said trademarks in any way it may see fit . . . .

■ At the outset, the Court would like to note that Honeywell has not alleged any activity which would indicate that the Agreement or the Trademark Agreement were anything less than genuine contracts. All the transactions between Ehrenreich and Metz which have been brought to this Court's attention appear to have been done in compliance with these two agreements. The ultimate question, therefore, is whether the rights and responsibilities set out by the agreements make Ehrenreich an agent of Metz for the purpose of receiving service of process. This Court is of the opinion that they do not.

This case appears to involve a typical exclusive distributorship. There is no indication that Metz helped to set up Ehrenreich or finance it in any way. The warranty and repair indemnification provision in the Agreement is in no way inconsistent with Ehrenreich's allegation that it was acting as an independent vendee of Metz's products. This Court is of the opinion that Metz was not helping to finance Ehrenreich's repair facilities by giving this credit; instead, Metz was simply trying to cover Ehrenreich's costs of repairing or replacing any defective devices Metz might have sold it.

■ Further, the shipping arrangement provision with its transfer of risk to Ehrenreich at the German border strongly indicates an arm's length vendee-vendor relationship. The use of Metz's trademarks also was in compliance with the Trademark Agreement. While it can be argued that widespread use of the trademarks by Ehrenreich may have resulted in an "agency by estoppel", this Court is convinced that Ehrenreich's use of the marks constitutes such a minimal contact with the State of Illinois that "traditional notions of fair play and substantial justice" would be offended if *in personam* jurisdiction over Metz was found. Accordingly, this Court holds that Metz does not have sufficient minimum contacts with the State of Illinois as to warrant this Court exercising *in personam* jurisdiction over it.

## II. IS METZ AMENABLE TO SERVICE UNDER ILLINOIS' "LONG-ARM" STATUTE?

Illinois' "long-arm" statute, Ill.Rev. Stat. ch. 110, § 17, provides:

> (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

> (a) The transaction of any business within this State . . . .

■ This Court is of the opinion, based upon the facts discussed hereinabove, that Metz has not transacted any business within the State of Illinois. Metz, a vendor of its products, completed all sales to Ehrenreich outside the State of Illinois. Consequently, this Court holds that Metz is not amenable to service under Illinois' "long-arm" statute.

Accordingly, it is hereby ordered, adjudged and decreed that defendant Metz Apparatewerke's motion to dismiss for lack of jurisdiction over the person is granted.