**AETNA INSURANCE COMPANY,**
Plaintiff,

v.

**Wallis HARTSHORN, d/b/a Hartshorn Enterprises, et al., Defendants-Appellees,**
**Claims, Inc., Defendant-Appellant.**

No. 72-1193.

United States Court of Appeals,
Fifth Circuit.

May 1, 1973.

Sam Gross, San Antonio, Tex., Caplan & Barsky, Detroit, Mich., for defendant-appellant.

Joel H. Klein, San Antonio, Tex., for Outlet Co.

Sylvan Alter, San Antonio, Tex., for Atlas Rand, Ampex, Trans Am.

Edward V. Dylla, San Antonio, Tex., for Greentree.

Leslie J. Bretz, San Antonio, Tex., for Monarch and Modern Elec.

Les Mendelsohn, San Antonio, Tex., for Mercury Rec.

Marvin C. Beck, San Antonio, Tex., for Sherman Elec.

Leo E. Eickhoff, Jr., Marlin L. Gilbert, San Antonio, Tex., for Bell.

John J. Clayton, San Antonio, Tex., for Barco.

Philip F. Benson, San Antonio, Tex., for Allied Rec.

Joe Warren Jones, San Antonio, Tex., for Mikado and Central Dist.

William S. Frank, Houston, Tex., for Santone Sales.

Henry Valdespino, Asst. U.S. Atty., San Antonio, Tex., for Internal Revenue.

Earle J. Cobb, Jr., San Antonio, Tex., for Hartshorn, Durflinger & J. Andrews Smith.

Edward E. DeWees, Jr., San Antonio, Tex., for Adell Corp., Les Ferguson & AVCO Broadcasting & Texas Star Broadcasting.

Richard C. Keene, San Antonio, Tex., for Aetna Ins. Co.

Before TUTTLE, WISDOM and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Because a busy district judge considered and disposed of the merits of

cases which were properly before him for the single function of ruling on a Motion to Consolidate several pending actions without first affording appellant Claims, Inc. (Claims) prior notice that such disposition might take place we are constrained to reverse and remand. The due process requirements of the Fifth Amendment of notice and opportunity to be heard were simply ignored in the rush to take final action.

On November 1, 1969, defendant-appellee Hartshorn, d/b/a Hartshorn Enterprises, a Texas corporation, suffered a fire loss which was insured under insurance policies issued by plaintiff Aetna Insurance Company for damage to property, and Aetna Fire Underwriters Insurance Company for loss of business due to fire (collectively hereinafter, Aetna). Hartshorn brought suit in Texas state court against Aetna to collect the $50,725.46 allegedly due under the fire damage policy. A number of Hartshorn's creditors also instituted suits in state court and in federal court against Aetna to recover claimed portions of the insurance proceeds.

In view of the multiplicity of suits instituted and threatened against Aetna, Aetna paid a total of $52,601.05 due under both policies ($50,725.46 fire damage, $1,875.59 for business loss) into the Registry of the court below and filed an interpleader action under 28 U.S.C. Section 1335 to determine which claimants were entitled to receive the money. Aetna also sought a temporary restraining order pursuant to 28 U.S.C. Section 2361 enjoining creditors with claims against Hartshorn from perfecting any actions against Aetna pending determinations of entitlement to the proceeds. Among the twenty-one defendants named in Aetna's complaint was defendant-appellant Claims, a Michigan corporation, whose claim against Hartshorn was for $5,072.55. This represented 10% of the fire damage loss, and was a fee claimed by Claims for investigating the claims against Hartshorn arising as a result of the fire.

Aetna filed its Motion to Consolidate all of the pending actions below on September 7, 1971, and a Motion in Opposition of Consolidation was filed the next day by Hartshorn Enterprises, Inc., one of the named defendants to the interpleader suit. The court thereupon sent notice to counsel for all parties, including Claims' attorney, a Mr. Seymour Caplan of Detroit, Michigan, that a "hearing on pending motions" was to be conducted on October 7, 1971, before the presiding judge in San Antonio, Texas.

Upon receipt of the court's notice, Mr. Caplan telephoned Mr. Earle Cobb, Jr., the San Antonio attorney who represented Hartshorn Enterprises, to inquire as to the nature of the pending motions referred to in the court's notice. Mr. Cobb accurately indicated that the reference was to the Motion to Consolidate the actions then on file and the Motion in Opposition thereto. Upon being so informed, Mr. Caplan concluded that since he did not oppose consolidation of the pending claims, his presence at the hearing was unnecessary. He so stated his position to Mr. Cobb.

Starting October 7 and continuing until the following morning, a hearing was held in San Antonio pursuant to the court's notice. Although not entirely clear the record indicates that the attorneys for all other parties were present, but Mr. Caplan, Claims' attorney, was absent. His absence was explained to the court by Mr. Cobb or at least an explanation was attempted, to which the trial judge paid scant heed. (see Note 1, infra).

The proceedings on October 7 quickly passed the consolidation motion stage and turned informally into a general conference between court and the attorneys present as to settlement of all pending suits and claims. Counsel were directed to work up a schedule of settlement and a proposed judgment, as well as preparing necessary preliminary orders. Adjournment was taken to October 8 to permit preparation of papers. Final disposition resulted by agreement

of all matters in controversy between those present and represented. The entire insurance proceeds before the court were divided by the final judgment between these parties, the claim of Claims, Inc. being expressly disallowed. The judgment found that Claims' interest in the Registry funds was subordinate to the judgments, liens and assignments of the other creditors, ordered the clerk of the court to disburse the monies to these priority creditors, and adjudged that Aetna had fully satisfied its obligations to defendant-appellee Hartshorn under both insurance policies. The judgment directed that Claims take nothing.

Defendant-appellant Claims appeals alleging the district court erred in dismissing its claim against the funds with prejudice because it had no notice of final hearing or opportunity to be heard.[1]

---

1. We reproduce from the Appendix a portion of the colloquy as to disposition of the claim of Claims, Inc., when court was reconvened on October 8.

"MR. COBB: (HARTSHORN'S ATTORNEY) I don't know whether the Court can help or not, I think perhaps the Court can. Mr. Keene has described the judgment which has been drawn up, we haven't examined it yet, again, assuming I have understood it correctly, *the defendant Hartshorn would have to object to the judgment on two grounds, first, that one of the creditors that was interpled and that is a party to this case has not been provided for;* and second, as the matter has turned out, the second insurance company, the Fire Underwriters Insurance Company, is paying a mere eighteen hundred dollars for a settlement of the business interruption policy, and this is not acceptable in view of the fact that all the creditors are not provided for.

THE COURT: Well, now, the only *creditor that is outstanding is the one you mentioned?*

MR. COBB: *This is the only one in the suit.* Now, my client is left with a number of creditors that have been suing him and harassing him, and it is my suggestion to these creditors that they forego the additional eighteen hundred dollars for the business interruption policy, accept their position of the amount that was entered into court, and then let us proceed on our business interruption policy.

THE COURT: Now, wait a minute, about this one creditor that has been referred to, how much does his claim amount to?

MR. COBB: $5,200.00, I believe.

MR. KEENE: (AETNA'S ATTORNEY) *The one creditor, Your Honor, is entitled Claims, Inc., which is a public adjuster which was retained by the Hartshorns to arrive at figures for the determination of the value of the losses, and their service all came up after the fire, and it is based not upon a sum certain but upon a percentage of any proceeds which may be recovered by the Hartshorns.* And I would also point out to the Court that Mr. Cobb speaks about a mere $1,875.00 only being paid by the business interruption policy; by the terms of this judgment, the insurer also gives up any right to recover their costs and attorney's fees, which they are entitled to under the federal interpleader statute, and that too amounts to a considerable amount.

THE COURT: Well, you have to remember that here under the law I would have to allow a big fee to him, unless he waived it, I would have had to allow a fee for him, and you could imagine what that would be, if we had to go down and painfully go through all the creditors on this thing, and I want you to keep in mind that this is a settlement and everybody gives up something when they settle.

MR. COBB: I am keeping that in mind, Your Honor, and—

THE COURT: There could have been a big interpleader fee here, and I want it fixed so your client will probably have to end up still owing some people, because he probably did owe some people independently of this suit, he shouldn't kick about what he owes, and he can't expect—unless he really just hits an oil well, so to speak, in these two losses here—he can't expect to liquidate everything that he really owed, so he has to give up something, I contemplated that you would end up still owing some people that might even sue him, but they wouldn't be covered by the inventory suit that the main policy is about, and I think if you will keep that in mind, instead of a mere eighteen hundred, *why you can add five thousand, as of today, as an interpleader fee today, that would run it up to about seven thousand dollars, and then take it from there as to how much more it would have been.*

MR. COBB: Well, this is assuming a couple of things, though, that I don't think are necessarily a fact. First, we deny that the insurance company, had the

■ The Due Process clause of the Fifth Amendment shields the individual against arbitrary exercise of governmental power by its guarantee that fundamental principles of justice and fair play not be violated. Two such fundamental principles, or minimal requirements, are adequate notice and opportunity to be heard or to defend. One thing that is clear from this sketchy record is that Claims was never on notice that the merits of its claim would be decided on October 7. The notice of the hearing limited its scope to hearing of "pending motions". The Motion to Consolidate and the Motion in Opposition thereto were the only motions then pending before the court.

■ Certainly, by failing to attend the hearing or otherwise interpose an objection defendant-appellant Claims waived any objections it may have had as to those motions. F.R.Civ.P. 12(h). Indeed, such was its intention as expressed by its attorney to Mr. Cobb. It was not opposed to the Motion to Consolidate. We express no view whatever as to the merits. This reversal may produce nothing for Claims since it may well be proper in a hearing on the merits to deny Claims access to any portion of the insurance proceeds. But Claims is entitled to its day in court, which it has never had. This means it is entitled to try to prove up and to argue the merits of its claim, after notice and opportunity to be heard.

right to interplead these funds in the first place, this suit had been filed in the State Court—

THE COURT: Well, yes, but by the time you got through with that, and you should be wrong, you just made money for the interpleader.

MR. COBB: That is true, but they claim they are giving up attorney's fees, well, we are giving up the balance of our claim on the inventory policy too, it is not all one way, but we are between the rock and the hard place on this point, *because it is not equitable for my client to agree to a judgment which prefers some creditors over the others, and particularly where a creditor is involved in this lawsuit.*

THE COURT: As I understand it, *you were going to compile a list of the creditors?*

MR. COBB: That is right, *and one was excluded.*

THE COURT: And I figured when the judgment was entered, that checks would be written to pay those people off so they could go home with the money, and I contemplated that you would end up owing some people, that is true, but under this settlement you got the matter settled.

MR. COBB: There is no question about that.

THE COURT: But I contemplated that both lawsuits be settled—well, not just one, but the three that are in front of me, that all lawsuits would be settled, and that you probably would end up owing a few general creditors. You will have to talk to your client and have him reconcile himself to the fact that he still had to pay some people some money.

MR. COBB: *If we include the other creditor that has intervened into this lawsuit, we may be able to work this thing out, but my client cannot agree to exclude a creditor that is involved in this lawsuit merely by reason of the fact that he is not here.*

THE COURT: *Well, if he is not here he is in default in not being here, then, he has been notified to be here.*

MR. COBB: *Well, I understood—well, I don't know about that, that may be the case.*

THE COURT: *If he is in default he is out of luck.*

MR. COBB: *If the Court wants to enter the judgment over our objection on that basis.*

THE COURT: *Well, I am going to— if he has been served and didn't appear today, why, I will enter the judgment against him by default,* or he can—or, if you had any better suggestion, I can enter it without prejudice against proceeding against your client, but it is with prejudice against everybody else, because they are here, and *if he was notified to be here and he didn't show to press his claim, why, that is just too bad, he just lost out, maybe your client can work out out a settlement with him.*

MR. COBB: With that understanding I'd like to examine the judgment.

(Emphasis supplied)

Certainly, Claims *was in default*, as pointed out by the judge, but it could only be held to have foregone opposing the consolidation of the several suits. *In no sense was Claims in default as to its claim against the Registry interpleader fund.*

Because defendant-appellant Claims, Inc., was misinformed and misled by the court—albeit innocently—as to the nature and purpose of the October 7 and 8 hearing, and was not present to assert its alleged interest in the insurance proceeds, we reverse the final judgment entered by the district court and order that full hearing on the merits be held with adequate notice to all parties.[2]

Reversed and remanded.

---

**2.** No supersedeas was sought as to the judgment appealed from. It may be difficult for the trial to provide a solvent source of payment of Claims' claim, if it is upheld on the merits. Hartshorn's liquidity is doubtful. But Aetna is solvent and was a party to the proceedings below.

The trial court should award money recovery where it finds liability to exist upon reexamination of the positions taken by the parties. We assume that the judgment has been satisfied by full payout of the deposited funds.