**HONEYWELL, INC.,**
**Plaintiff-Appellant,**

v.

**METZ APPARATEWERKE,**
**Defendant-Appellee.**

No. 72–1987.

United States Court of Appeals,
Seventh Circuit.

Heard Sept. 24, 1973.

Decided Jan. 7, 1975.

**1138**

Sheldon W. Witcoff, Chicago, Ill., for plaintiff-appellant.

Clarence J. Fleming, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Circuit Judge, and KNOCH and O'SULLIVAN,* Senior Circuit Judges.

O'SULLIVAN, Senior Circuit Judge.

Plaintiff-appellant Honeywell, Inc. (Honeywell) brought this action under the Patent Act of 1952, 35 U.S.C. § 1 et seq., in the United States District Court for the Northern District of Illinois, alleging that the four named defendants had infringed two United States patents owned by plaintiff. Upon motion of one of the defendants, Metz Apparatewerke (Metz), appellee here, the District Court determined that it lacked personal juris-

---

* Senior Circuit Judge Clifford O'Sullivan of the Sixth Circuit, sitting by designation.

diction over such appellee and dismissed the complaint as to it. Honeywell, Inc. v. Metz Apparatewerke, 353 F.Supp. 492 (N.D.Ill.1972). Insofar as this appeal is concerned, the validity of plaintiff's patents is not challenged by defendant-appellee Metz; neither does appellee deny that the products manufactured by it and distributed by its codefendants in the United States infringed plaintiff's patents.

We reverse and remand.

## I. STATEMENT OF FACTS

Appellant Honeywell is a Delaware corporation with its principal place of business in Illinois. It is the assignee of United States Letters Patent No. 3,519,-879 and United States Reissue Letters Patent No. 26,999, both of which cover an electronic photographic flash unit. Appellee Metz is a proprietorship organized under the laws of the Federal Republic of Germany, and produces computerized, electronic photographic flash units which are manufactured in West Germany and shipped to the United States f.o.b. West Germany, with instructions in English. The three defendants below that are not parties to this appeal are: (1) Ehrenreich Photo-Optical Industries (a New York corporation), and (2) Ehrenreich Photo-Optical Industries of Illinois, Inc., both United States distributors of Metz flash equipment, and (3) Bass Camera Company, a Chicago retailer of Metz flash units. The two Ehrenreich firms are separate corporate entities, the Illinois corporation being a wholly owned subsidiary of the New York corporation. The distinction, if any, between these two is not germane to this appeal. Therefore, Ehrenreich of New York and Ehrenreich of Illinois are referred to collectively herein as "EPOI."

In early 1970, Honeywell granted a license under its patents to two German companies—Rollei and Bauer-Borsch—under which the licensees were permitted to sell electronic flash units in the United States. In June of 1970, Metz began negotiating with Honeywell for a similar license, but negotiations ultimately reached an impasse, and in October, 1970, Metz informed Honeywell that "[s]ince a further delay cannot be accepted . . . I have decided to effect deliveries [of Metz units] to the United States immediately." On August 24, 1970, Metz and EPOI had entered into an exclusive distribution agreement, and in November, 1970, after notifying Honeywell, Metz began to market various models of its allegedly infringing electronic flash units in the United States through EPOI. In December, 1970, and continuing since then, defendant Bass Camera Company has been selling such Metz products at retail, having purchased them from EPOI.

The August, 1970, distribution agreement between Metz and EPOI contained the following terms:

(1) Metz appointed EPOI its exclusive distributor of flash units and components within the United States.

(2) EPOI was to deal with its own customers and with Metz as an "independent trader," and was to bear all expenses arising from its business affairs.

(3) EPOI agreed to exploit its territory in the marketing of Metz flashes, to adequately publicize the units, and to provide after-sale repair service.

(4) EPOI was limited in the number of products it could sell in competition with Metz products. It could not export Metz products outside the granted territory, or delegate its sales obligation, or represent Metz in legal transactions.

(5) EPOI was held to a set quota of Metz products.

(6) Metz agreed to furnish publicity material to EPOI. EPOI was required to submit quarterly reports on its sales.

(7) Goods were to be delivered f.o.b. German seaport or German border, and EPOI assumed all transportation and insurance expenses thereafter incurred.

(8) Metz warranted its products as to merchantability. After-sale service and warranty repairs were to be done at EPOI's expense, with 3% of invoice net value to be credited to EPOI as reimbursement for such work.

(9) EPOI was granted certain trademark rights.

(10) Metz agreed to indemnify and hold EPOI harmless regarding any claims of patent infringement.

(11) Metz was granted the right to inspect EPOI premises and obtain information regarding EPOI's affairs.

(12) The parties had certain termination rights and obligations.

(13) The contract was not assignable.

(14) All contract provisions were to be interpreted according to German law, and Nuernberg was designated as the court of exclusive jurisdiction, unless Metz chose to use New York law and courts.

The record also shows that EPOI serviced and performed warranty work on Metz flash units in Chicago under the name of "Metz Flash Service"; and, there was evidence also that on May 17, 1971, the following notice was published in an American trade journal, *Photo Weekly*:

To: ALL PHOTO RETAILERS

Re: METZ/MECABLITZ FLASH EQUIPMENT

It has come to our attention that rumors are being circulated throughout the trade to the effect that purchasers of the Metz MECABLITZ flash guns being distributed in this country by Ehrenreich Photo-Optical Industries, Inc. will be liable for damages because of alleged infringement of certain patents owned by Honeywell, Inc.

These rumors are totally without foundation.

Honeywell has instituted a suit in Chicago against Metz and Ehrenreich. Metz has agreed to indemnify and hold harmless Ehrenreich and its customers for any and all claims of patent infringement. The issues of validity of the Honeywell patents and their alleged infringement are being vigorously contested by the defendants in the Chicago litigation.

Ehrenreich Photo-Optical Industries, Inc.

Garden City, New York 11530.

Honeywell commenced suit against Metz on February 26, 1971, and on January 14, 1972, leave to file an amended complaint was granted. Insofar as this appeal is concerned, the amended complaint asserted, in summary, that Metz had infringed Honeywell's patents in violation of 35 U.S.C. § 271. On March 22, 1971, Metz moved to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure, contending primarily that the court lacked *in personam* jurisdiction over Metz.[1]

After an amendment to the original complaint was allowed and filed, Metz renewed its motion to dismiss, and on September 6, 1972, the District Judge granted the motion reciting *inter alia* that:

"Metz does not have sufficient minimum contacts with the State of Illinois as to warrant this Court exercising *in personam* jurisdiction over it.

\* \* \* \* \* \*

"This Court is of the opinion . . . that Metz has not transacted any business within the State of Illinois. . . .

Service of a summons and the amended complaint was made on Metz in accordance with Illinois law, Ill.Rev.Stat. Ch. 110, § 16, as permitted by Fed.R.Civ.P. 4(e). In its motion to dismiss the amended complaint, Metz did not assert any insufficiency in the manner of service of process, and no challenge to the manner of service is made on this appeal.

1. The question of proper venue was presented to and disposed of by the District Court. Relying on 28 U.S.C. § 1391(d) which provides that "An alien may be sued in any district," the District Court held that ". . . Metz's motion to dismiss for improper venue will be denied." 353 F.Supp. at 493. The propriety of such holding is not challenged by appellee.

Consequently, this Court holds that Metz is not amenable to service under Illinois' 'long-arm' statute." 353 F.Supp. at 495.

## II. THE ISSUE ON APPEAL

Appellant contends that exercise of personal jurisdiction over Metz was warranted under a subsection of the Illinois long-arm statute, to-wit: Ill.Rev.Stat. Ch. 110, § 17(1)(b), which reads as follows:

"§17. (Civil Practice Act, § 17). Act submitting to jurisdiction—Process

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

\* \* \* \* \* \*

(b) *The commission of a tortious act within this State;*"

(Emphasis supplied.)

and that Metz was guilty of a "tortious act within this State [Illinois]" by virtue of 35 U.S.C. § 271(b) which provides that

"Whoever actively induces infringement of a patent shall be liable as an infringer."

## III. DID METZ COMMIT A TORTIOUS ACT IN ILLINOIS?

■ Infringement of a patent is a tort, which would bring Metz within the ambit of Ill.Rev.Stat. Ch. 110, § 17(1)(b) provided that, under the applicable patent law, Metz could be deemed an infringer, and provided that the infringement, if any, was "committed" in Illinois. In Welch Scientific Co. v. Human Engineering Institute, Inc., 416 F.2d 32, 34 (7th Cir. 1969), cert. denied, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970), this Court said

"The Illinois long arm statute, Ill.Rev. Stat. Ch. 110, § 17, provides for service when a person or his agent has committed a 'tortious act' within the state. Here, defendant is charged with infringing plaintiff's patent, a tortious act, in Illinois." 416 F.2d at 34.

In Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 33, 51 S.Ct. 334, 75 L.Ed. 819 (1931), the Supreme Court said

"Infringement, whether direct or contributory, is essentially a tort, and implies invasion of some right of the patentee." 283 U.S. at 33, 51 S.Ct. at 336.

See also, Waltham Watch Company v. Hallmark Jewelers, Inc., 336 F.Supp. 1010, 1011 (N.D.Ill.1971).

■ Section 271(b), of Title 35 U.S.C., upon which appellant relies, may be broadly described as an aiding and abetting statute, and was intended as part of a codification of the case law doctrine of "contributory infringement." This doctrine was developed at the end of the nineteenth century to prevent appropriation of the benefits of patented inventions through indirect means. 1952 U.S. Code Cong. & Admin.News 2394, 2402. Thus § 271(b) was not designed to subject to liability a party who actually infringes a patent. Gould-National Batteries, Inc. v. Sonotone Corp., 130 U.S. P.Q. 26, 29 (N.D.Ill.1961), but Metz has not been charged with direct infringement through manufacture, use or sale of an invention within the United States. Honeywell alleges that Metz makes and sells the accused devices, but these acts are said to occur in Europe rather than in this country, and although the patent laws of the United States do not have extra-territorial effect, "active inducement" may be found in events outside the United States if they result in a direct infringement here. Engineered Sports Products v. Brunswick Corp., 362 F.Supp. 722, 727 (D.Utah 1973); *Cf.,* Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 526–527, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972). The conduct charged to Metz would, if proved, support a finding that Metz was seeking to

induce EPOI to infringe appellant's patents.

By its terms, § 271(b) requires that liability be found only if the inducement is "active," in the sense that to be held as a contributory infringer, one must purposefully cause, urge or encourage another to infringe. Fromberg, Inc. v. Thornhill, 315 F.2d 407, 411 (5th Cir. 1963); Marston v. Gant, 351 F.Supp. 1122, 1125 (E.D.Va.1972). Analyzing Honeywell's contentions from this point of view, it can hardly be said that Metz's alleged involvement in the events related to this case was passive in nature. The essence of the distribution agreement between Metz and EPOI was Metz's intention to invade the United States market at a time when Metz was fully aware of Honeywell's United States patents. Metz did not accomplish this purpose directly, but it did provide its distributor, EPOI, with the means to do so. Shipments were made in the knowledge that, under the agreement, distribution would inevitably take place in the United States, and to that end, Metz even furnished EPOI with instruction booklets in English. In addition, Metz agreed to assist in publicizing the flash units; Metz had the right to inspect and obtain information about EPOI's business affairs; Metz agreed to indemnify EPOI for patent infringement claims; and EPOI received credit against invoices from Metz for after-sale repairs performed in the United States. This network of arrangements is certainly indicative of an active inducement to infringe.

There remains, however, the issue of the second requirement of the Illinois long-arm statute: i. e., that the tortious act be committed "within the State." In this regard, it need only be said that under Illinois law, it is now well settled that the term "tortious act" inevitably includes the concept of injury, and for the purposes of Ill.Rev.Stat. Ch. 110, § 17(1)(b), the situs of the tort is the place where the injury occurs. Consolidated Laboratories, Inc. v. Shandon Scientific Co., 384 F.2d 797, 802 (7th Cir. 1967); Waltham Watch Company v.

Hallmark Jewelers, Inc., 336 F.Supp. 1010, 1011 (N.D.Ill.1971); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 435-436, 176 N.E.2d 761, 762-763 (1961).

Metz attempts to distinguish *Gray, supra,* in which personal jurisdiction was exercised over a non-resident defendant who had negligently manufactured a safety valve in a state other than Illinois, and had shipped the valve to Pennsylvania, where it was incorporated in a water heater by a third party. The heater was then shipped to Illinois (by the third party), where it subsequently exploded, injuring the plaintiff. Metz contends that in *Gray*

"[the non-resident defendant] *directly participated in the acts which constituted the commission of a tort in the State of Illinois.* Personal jurisdiction over [the non-resident defendant] was not based on the mere physical presence of its products within Illinois.

\* \* \* \* \* \*

"The acts of Metz under any theory of inducement of infringement occurred outside of the State of Illinois. Therefore, Metz is not a participant to the alleged tortious conduct which occurs in Illinois. Thus, *Gray* and other products liability decisions are inapposite to the present case . . ." (Appellee's Brief at 9; emphasis in original.)

We believe that the factual distinctions between *Gray* and the instant case create no effective legal or theoretical difference between the two, in light of the nature of the "active inducement" provision of 35 U.S.C. § 271(b). An induced infringement, such as that alleged by Honeywell, is a tortious act committed within the state of Illinois, within the meaning of Ill.Rev.Stat. Ch. 110, § 17(1)(b), even though it is not asserted that Metz performed any specific act in that state.

We conclude that the facts of this case meet the statutory requirements for exercise of personal jurisdiction by the Court below. There remains, however,

the question as to whether such exercise of jurisdiction offends the Constitution.

## IV. DUE PROCESS LIMITATIONS

Ultimately, amenability to extra-territorial personal jurisdiction is a question of due process. The long-standing "presence" test of due process set forth in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878) has been considerably eroded in favor of the less stringent requirement announced in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) that a defendant must

> "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158.

The same rule was adhered to in McGee v. International Life Insurance Co., 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

Although the parties to this appeal have not raised the point in arguing the issue of minimum contacts, we recognize, of course, that *International Shoe* and its direct progeny reached the federal judiciary either by way of review of state court judgments or by way of diversity jurisdiction, and as a result, the holdings in those cases have been framed in terms of restraints on *state* power. In this litigation, on the other hand, a federally created right is at issue, and due process is properly a matter for examination in light of the Fifth Amendment rather than the Fourteenth Amendment.

■ That is not to say, however, that the *International Shoe* line of cases is irrelevant to our inquiry here. The due process clause of the Fifth Amendment is essentially a recognition of the principles of justice and fundamental fairness in a given set of circumstances, Galvan v. Press, 347 U.S. 522, 530, 74 S.Ct. 737, 98 L.Ed. 911 (1954); Aetna Insurance Company v. Hartshorn, 477 F.2d 97, 100 (5th Cir. 1973), and, so viewed, on the facts of this case, we can perceive no operative difference between the concept of due process as applied to the states and as applied to the federal government. This and other courts have reached this result, explicitly or tacitly, and have applied the "minimum contacts" standard to federal question cases in which *in personam* jurisdiction was at issue, and we deem it appropriate to do so here.[2] Fisons Limited v. United States, 458 F.2d 1241, 1250 (7th Cir. 1972), cert. denied, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972); Fraley v. Chesapeake and Ohio Railway Company, 397 F.2d 1, 3–4 (3d Cir. 1968); Volkswagen Interamericana, S. A. v. Rohlsen, 360 F.2d 437, 440 (1st Cir. 1966), cert. denied, 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1966); Stanley v. Local 926 of Op. Eng., AFL–CIO, 354 F.Supp. 1267, 1271 (N.D.Ga.1973); SCM Corporation v. Brother International Corporation, 316 F.Supp. 1328, 1333–1334 (S.D.N. Y.1970); Securities and Exchange Commission v. Myers, 285 F.Supp. 743, 748–749 (D.Md.1968); Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219, 232 (D.N.J.1966). *Cf.,* Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778, 782–783 (E.D.Pa.1961); Lone Star Package Car Co. v. Baltimore and O. R. Co., 212 F.2d 147, 154–155 (5th Cir. 1954).

■ The question of minimum contacts has a variety of facets, but its essence is that due process restricts the exercise of *in personam* jurisdiction to instances in which it would not be unfair to a defendant. Milosavljevic v. Brooks, 55 F.R.D. 543, 547 (N.D.Ind.1972). Thus,

---

**2.** In certain opinions, a test of "minimum contacts" with the United States as an entity (rather than minimum contacts with the state in which the federal court sits) has been applied. Holt v. Klosters Rederi A/S, 355 F.Supp. 354, 356–357 (W.D.Mich.1973); Alco Standard Corporation v. Benalal, 345 F.Supp. 14, 24–25 (E.D.Pa.1972); Edward J. Moriarty & Co. v. General Tire & Rubber Co., 289 F.Supp. 381, 390 (S.D.Ohio 1967); First Flight Company v. National Carloading Corporation, 209 F.Supp. 730, 736–737 (E.D.Tenn.1962). We need not reach such a broad conclusion here.

the number and extent of contacts which will support exercise of personal jurisdiction are not quantifiable and cannot be determined by application of a rigid formula or rule. In other words, the issue of minimum contacts turns on the specific facts of each case, and the existence or absence of jurisdiction depends on an assessment of the quality and nature of a defendant's activity. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1233 (1958). The test, then, is a flexible one which emphasizes the reasonableness of subjecting a defendant to suit; and the proper inquiry is whether a non-resident defendant can be said to have invoked, by act or conduct, the benefits and protection of the laws of the forum. *International Shoe, supra,* 326 U.S. at 319, 66 S.Ct. 154; *Hanson, supra,* 357 U.S. at 253, 78 S.Ct. 1228; Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481, 484 (7th Cir. 1968); Consolidated Laboratories, Inc. v. Shandon Scientific Co., 384 F.2d 797, 801 (7th Cir. 1967).

■ Applying these principles to the case at hand, we hold that Metz had the requisite minimum contacts with the state of Illinois to subject it to the personal jurisdiction of the District Court. Unlike the situation in Marston v. Gant, 351 F.Supp. 1122 (E.D.Va.1972), upon which Metz relies, Metz was not merely a foreign manufacturer which sold to various foreign exporters, knowing that the exporters would, in turn, sell to distributors throughout the world, including the United States.

Originally, Metz attempted to obtain a license under the Honeywell patents, and from the time that the license negotiations were terminated, Metz was acting with the knowledge that exportation of the accused devices to the United States would infringe Honeywell's patent rights. Moreover, by entering into the exclusive agreement for distribution in the United States, Metz purposely promoted American sales and ensured that such infringement would take place, causing injury to Honeywell, a corporation with its principal place of business in Illinois. Subsequently, sales did, in fact, take place in Illinois and these sales obviously generated revenue for Metz, although such revenue passed through EPOI.

■ To the extent that a corporate defendant avails itself of the privilege of conducting activities in a state, it enjoys the benefits and protection of the laws of that state, *International Shoe, supra,* 326 U.S. at 319, 66 S.Ct. 154, and we believe that Metz has done so by injecting its products into the Illinois marketplace. Metz urges that its activity does not fit this mold simply because its products are sold to EPOI "f.o.b. German seaport or German border," Appellee's Brief at 11, but that position is not, of course, a realistic evaluation of the nature and quality of Metz's business affairs, viewed in light of the arrangement with EPOI.

■ Direct contact with the forum state is not essential to the exercise of personal jurisdiction. Metz may not have physically entered the state of Illinois, but it placed its flash devices in the stream of commerce under such circumstances that it should reasonably have anticipated that injury through infringement would occur there. Jones Enterprises, Inc. v. Atlas Service Corporation, 442 F.2d 1136, 1138–1140 (9th Cir. 1971); Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231, 235 (9th Cir. 1969); Eyerly Aircraft Co. v. Killian, 414 F.2d 591, 596–597 (5th Cir. 1969); Keckler v. Brookwood Country Club, 248 F.Supp. 645, 648–649 (N.D.Ill.1965); *Gray, supra,* 22 Ill.2d at 441–443, 176 N.E.2d at 766. We look to the economic and commercial realities of this case, and in our view, it is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products.

Lastly, we recognize, as the Supreme Court stated in *International Shoe, supra,* 326 U.S. at 317, 66 S.Ct. at 158, that "[a]n 'estimate of the inconven-

iences' which would result to" a defendant is relevant to the issue of "minimum contacts." We have taken this into account and have determined that any inconvenience that may come to Metz in defending this lawsuit is outweighed by the considerations discussed above. Inconvenience alone is not a violation of due process.

We conclude that the activities engaged in by Metz were sufficient to establish minimum contacts with the state of Illinois, and that exercise of personal jurisdiction pursuant to the "tortious act" provision of the Illinois long-arm statute, Ill.Rev.Stat. Ch. 110, § 17(1)(b), would not violate the due process clause of the Fifth Amendment.

Reversed and remanded.

KNOCH, Senior Circuit Judge (dissenting).

I found Judge Bauer's opinion well reasoned and persuasive. It seems to me that conjectures concerning the motives of the defendant-appellee are irrelevant here. On the basis of the actions taken I would find that the statutory requirements for exercise of personal jurisdiction were not met. With regret, therefore, I must respectfully dissent.