**JADAIR, INC., Plaintiff-Appellant,**

v.

**The WALT KEELER COMPANY, INC., Defendant-Appellee.**

**No. 81–1380.**

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 11, 1982 *.

Decided May 26, 1982.

Certiorari Denied Oct. 18, 1982. See 103 S.Ct. 258.

Ross R. Kinney, Quarles & Brady, Milwaukee, Wis., for plaintiff-appellant.

Robert A. Christensen, Foley & Lardner, Milwaukee, Wis., for defendant-appellee.

Before CUMMINGS, Chief Judge, and SPRECHER ** and WOOD, Circuit Judges.

CUMMINGS, Chief Judge.

Jadair, Inc. ("Jadair"), a Wisconsin corporation, brought a declaratory judgment action in Wisconsin state court against the Walt Keeler Company, Inc. ("Keeler"), a Kansas corporation. Keeler removed the suit to federal court under 28 U.S.C. § 1441(a). Jadair challenged the removal, arguing that Keeler had failed to demonstrate an amount in controversy in excess of $10,000. In a March 1980 memorandum and order Judge Warren denied Jadair's motion to remand the case to state court. Then Keeler moved to dismiss the federal suit for lack of personal jurisdiction, and in a February 1981 memorandum and order Judge Warren granted Keeler's motion. 508 F.Supp. 879. Jadair's appeal is phrased in the alternative: the case should have been remanded; if not, the federal court should have exercised jurisdiction over Keel-

---

* This case was scheduled for oral argument on January 11, 1982. Owing to severe winter weather, the parties agreed to submit it on the briefs.

** Circuit Judge Robert A. Sprecher read the briefs, participated in the conference and voted to affirm. However, he died without reviewing this opinion.

er. We affirm both of Judge Warren's rulings.

## I

Jadair manufactures machinery for cleaning cement mixers in Port Washington, Wisconsin. In November of 1978 Keeler, which produces concrete and other building materials in Wichita, Kansas, contracted to buy a Jadair machine for $75,850. The unit was shipped to Keeler's plant, but did not perform satisfactorily. In September of 1978 Keeler sent Jadair a bill for $6,825.24 worth of electrical and hydraulic repairs to the machine. The parties were not able to resolve their differences, including who should pay this bill.

What would have been a garden-variety contract dispute became more complicated as the parties jockeyed for litigating position. Seeking a convenient forum Jadair moved first. On October 22, 1979, it asked the Circuit Court of Milwaukee County to declare it free of any liability to Keeler. Keeler countered by removing the action to federal court on November 15, 1979, apparently in hopes Wisconsin's long-arm statute would be construed more narrowly there than in a Wisconsin state court. If it were successful in having the suit dismissed, Keeler could then force Jadair either to litigate in Kansas or to wait to be sued in Wisconsin.

## II

■ As a single defendant and non-citizen of Wisconsin, Keeler was entitled to remove the lawsuit against it from state to federal court, if the federal court could have entertained the case in the first place. 28 U.S.C. § 1441(a) and (b). That provision requires in this instance that diversity jurisdiction be properly invocable—i.e., that the dispute be between citizens of different states and that the amount in controversy exceed $10,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

For purposes of this appeal, the only issue is how to evaluate, *ex ante*, the amount in controversy. Declaratory judgment and injunctive relief actions sometimes present difficult and subtle valuation problems, as *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 391–395 (7th Cir. 1979), indicates. Here, however, Jadair sought a declaration of nonliability as to any and all Keeler claims. Therefore the amount in controversy must be what Keeler could possibly recover from Jadair. Jadair argues that Keeler's maximum recovery would be its $6,825.24 out-of-pocket expenses. In response Keeler says it has additional claims for $9,300 in consequential damages, or for rescission and restoration of the contract price. Jadair thinks we must ignore these claims because (1) Keeler never demanded either consequential damages or rescission in its negotiations with Jadair; (2) Keeler made the claims only after Jadair moved to remand the case, and the jurisdictional amount must be demonstrated at the time of Keeler's removal petition; (3) consequential damages were excluded by contractual agreement; and (4) rescission is too remote a possibility to count in the computation.

Jadair's first two objections are easily disposed of. Conduct during negotiations could conceivably create an estoppel which would preclude success on the merits,[1] but a party's prayer for relief is not legally limited to amounts he would have settled for when he thought settlement was a real possibility.[2] Nor is a court obliged to rely solely on the removal petition—or on an original complaint—to test the sufficiency of the alleged jurisdictional amount. It is entitled to consider the matter when the parties raise it, as they did here by a motion to remand and the memorandum and affi-

---

1. We speak theoretically and intimate no view about estoppel in this case.

2. Jadair throughout its brief treats this case as if Keeler were the plaintiff and had sought $6,825.24 in state court, voluntarily dismissed its suit, and then brought it in federal court with an inexplicably inflated prayer for relief.

Only if Keeler's position is so misconstrued is *Arnold v. Troccoli*, 344 F.2d 842 (2d Cir. 1965), comparable. Jadair Br. 15–17. Here the change from a negotiating to a litigating posture is sufficient to explain Keeler's changed demands.

davits in opposition thereto. Exactly this procedure was followed by the district court, without demur by this Court, in *McCarty, supra,* 595 F.2d at 391.

Jadair's third argument involves the application of the Uniform Commercial Code, as enacted in Wisconsin and Kansas.[3] The contract limited damages to the costs of repair or replacement, but that provision may not be enforceable if "circumstances cause [the] exclusive or limited remedy to fail of its essential purpose." UCC § 2–719(2). Whether the repair efforts were futile enough to activate section 2–719(2) is a factual question not yet capable of resolution, but it is at least not impossible that Keeler could recover both its direct and consequential damages, which together amount to more than $14,500.

Like the district judge, we need not reach Keeler's claim for rescission and Jadair's argument against it, because the jurisdictional hurdle is surmounted by Keeler's showing on direct and consequential damages. We note, however, that the rescission claim too is grounded on the Uniform Commercial Code[4] and requires factual development. Keeler's right to rescind is not contingent, however, nor is its value necessarily less than $10,000.[5]

**3.** The choice-of-law issue is cloudy. Jadair Br. 19, n. 3, argues that Kansas law would govern under Wisconsin choice-of-law rules. But Keeler Br. 9 states that the contract had a choice-of-law provision calling for the application of Wisconsin law. Apart from a possibly more conservative judicial construction of Section 2–719(2) in Kansas (Jadair Br. 23–25), it is immaterial because both states have enacted the Code. But see note 7 *infra.*

**4.** White and Summers, Handbook of the Law under the Uniform Commercial Code (2d ed. 1980), 295, n. 2, assume that the Code's revocation provision (Section 2–608) replaces common-law rescission unless there is an allegation of fraud.

**5.** Thus the right to revoke is not comparable to the possibility of receiving future disability payments under an insurance contract. The analogy is drawn at Jadair Br. 18. The value of the right to rescind is a more difficult question. The parties have assumed that it is equal to the contract price ($75,850), but Keeler would have

III

Having established that the district court had subject-matter jurisdiction, we turn to the issue of personal jurisdiction. The Wisconsin long-arm statute, made applicable in federal diversity cases by Rules 4(e) and 4(d)(7) of the Federal Rules of Civil Procedure, contemplates jurisdiction over an out-of-state defendant if the action "[r]elates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the defendant's order or direction." Wis.Stat.Ann.1977, § 801.05(5)(d). But there are constitutional limits on the reach of the Wisconsin statute.[6] The Supreme Court's most recent statement of those limits is as follows:

[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.[7] Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. * * * The Due Process Clause, by ensuring the "orderly administration of the laws," * * * gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will or will not render them liable to suit.

to return the machine if it got its money back. On the other hand, the jurisdictional amount does not ordinarily have to reflect counterclaims or offsets; it is not a net figure.

**6.** Jadair assumes (Br. 29–30) that these constitutional limits are really just ill-masked policy determinations by federal courts. The line of Supreme Court precedent, stretching from *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565, to *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490, suggests otherwise. Furthermore, Jadair's hostility to policy determinations is only intermittent: in its argument in favor of a remand, it invites us to note proposals to raise the jurisdictional amount in diversity cases to $25,000 and to find in its favor because federal courts should not be "clogged" with diversity suits (Br. 12–14).

**7.** Or, in the circumstances here, that a product will be manufactured in the forum state.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490.

■ This case presents us with a defendant whose only connection with Wisconsin was ordering a machine from a manufacturer headquartered there. Keeler personnel never visited Jadair's plant or negotiated with Jadair in Wisconsin. All face-to-face meetings between Keeler and Jadair occurred in Wichita. The contract was agreed on and executed there. The telephone calls and letters which Jadair claims have jurisdictional significance are not, as Jadair hints, separate contacts. They are all attempts by Keeler to get Jadair to repair the malfunctioning machine. If selling the machine to a Kansas buyer is not sufficient to warrant bringing him into a Wisconsin court, Keeler's later efforts to get the machine to work properly cannot add anything to the calculations.[8]

We are presented therefore with a case that is entirely governed by *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), certiorari denied, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325. There, as here, we could assume that the buyer believed the seller would perform in Wisconsin, 597 F.2d at 603. There, unlike here, the buyer had sent the purchase order to Wisconsin, *id.* at 604. There, and *a fortiori* here, the dearth of contacts made it unfair to require the out-of-state buyer to defend in a Wisconsin court. As the *Lakeside* court remarked,

citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 "[t]he unilateral activity of [one] who claim[s] some relationship with a nonresident defendant * * * cannot satisfy the requirement of contact with a forum State." 597 F.2d at 603. *Accord, Koster v. Automark Industries, Inc.*, 640 F.2d 77 (7th Cir. 1981).

Recognizing the importance of *Lakeside*, Jadair attacks it as a return to the old-fashioned territorialism of *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565, and notes law review commentary critical of its reasoning.[9] We think the inflexibility of *Lakeside* has been exaggerated.[10] The case is a sound attempt to define the limits of long-arm jurisdiction in commercial contexts. Assuming that long-arm jurisdiction has some such limits, surely the defendant whose sole contact with a state is that his seller's place of business is located there is entitled to invoke them.[11]

The judgment appealed from is affirmed. Costs to appellee.

---

**8.** In some circumstances an explicit choice-of-law provision in the contract might be relevant to the defendant's reasonable expectation of suit in the forum whose law is chosen. Here, however, neither party relies on the contract's choice-of-law provision; indeed Jadair hopes to have the substantive law of Kansas applied. See note 3 *supra*. Accordingly we give the provision no weight as a forum contact.

**9.** See Jadair Br. 31–39, 42–43.

**10.** Thus in *Biltmoor Moving & Storage Co. v. Shell Oil Co.*, 606 F.2d 202 (7th Cir. 1979), we allowed Illinois to assert jurisdiction in a dispute between Texas and Missouri moving companies. The decisive contact with Illinois was that the entity to be moved was Shell Oil Company's research laboratory in Wood River, Illi-

nois. And in *Wisconsin Electrical Manufacturing Co., Inc. v. Pennant Products, Inc.*, 619 F.2d 676 (7th Cir. 1980), we upheld Wisconsin jurisdiction over a New York corporation on the basis of two visits to Wisconsin, each of which was of major importance to the negotiation of the contract.

**11.** Cf. Comment, *Constitutional Limits on State Long Arm Jurisdiction*, 49 U.Chi.L.Rev. 156, 174–177 (1982). The author suggests that the Commerce Clause reinforces the Due Process Clause and serves as an independent restraint on long-arm jurisdiction in some circumstances. The analysis there would support the result, though not necessarily the rationale, in *Lakeside*.