47 F.3d 1164
 33 U.S.P.Q.2d 1758
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AUTOSCRIBE CORPORATION, Plaintiff-Appellant,
v.
GOLDMAN and Steinberg, d/b/a Intell-A-Check; Goldman and
Steinberg, Incorporated; Intell-A-Check,
Incorporated, Defendants-Appellees.
 No. 94-1749.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 6, 1994.
Decided: February 3, 1995.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., District Judge. (CA-93-2884-B)
 D.Md.
 AFFIRMED.
 ARGUED: Emerson V. Briggs, III, LEVY, ZITO & NALLS, Washington, DC, for Appellant. Patricia McHugh Lambert, SMITH, SOMERVILLE & CASE, Baltimore, MD, for Appellees. ON BRIEF: Joseph J. Zito, LEVY, ZITO & NALLS, Washington, DC, for Appellant. Allen F. Loucks, James E. Myers, SMITH, SOMERVILLE & CASE, Baltimore, MD; Alfred P. Ewert, Maria C.H. Lin, Andrew M. Riddles, MORGAN & FINNEGAN, New York, NY, for Appellees.
 Before RUSSELL and MOTZ, Circuit Judges, and CURRIE, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal involves the question of whether a federal court, sitting in Maryland, has personal jurisdiction over out-of-state corporate defendants in a copyright infringement action. The defendant corporations entered into a contract to buy a license for copyrighted software from the Maryland corporate plaintiff, telephoned the plaintiff for information as to the use of the software, responded to requests for sales information from Maryland agents of the plaintiff and, on behalf of out-of-state clients, attempted to collect amounts owed to the out-of-state clients by some Maryland residents. Because these contacts do not evidence sufficient purposeful activity by the defendants directed at the State of Maryland to constitute the requisite minimum contacts with Maryland, the exercise of personal jurisdiction over the defendants is not permissible under the Maryland long-arm statute. Accordingly, we affirm the district court's dismissal of this case for lack of personal jurisdiction.
 
 I.
 
 2
 In February, 1993, AutoScribe Corporation, a Maryland corporation with its principal place of business in Maryland, agreed to license software to Goldman & Steinberg, Incorporated, a debt collection agency incorporated in New Jersey, with its principal place of business in that state. AutoScribe signed a licensing agreement and then sent the agreement from its corporate headquarters in Maryland to Goldman & Steinberg in New Jersey. Goldman & Steinberg executed the form licensing agreement in New Jersey and then returned the fully executed agreement and payment for the license to AutoScribe in Maryland. In the agreement, Goldman & Steinberg agreed to purchase a license for AutoScribe's "Auto-Pay" checkdrafting computer software; AutoScribe, in turn, agreed to provide technical support and software updates. The licensing agreement further provided that the copyright to Auto-Pay belonged exclusively to AutoScribe and that Goldman & Steinberg was prohibited from transferring, sublicensing, renting, leasing, distributing, copying, or making any use of the software except for its own debt collection purposes. Following receipt of the Auto-Pay software, Goldman & Steinberg telephoned AutoScribe in Maryland nearly a dozen times seeking technical support and assistance in installing the software. At no point during the sale or subsequent installation of the software did a Goldman & Steinberg employee or agent visit AutoScribe's headquarters or enter Maryland.
 
 
 3
 Several months later, AutoScribe discovered that Intell-A-Check, Incorporated, had begun marketing software. AutoScribe believed that the Intell-A-Check software employed copyrighted aspects of the Auto-Pay software program. Intell-A-Check, also a New Jersey corporation with its principal place of business in New Jersey, shares the same corporate address and the same president as Goldman & Steinberg. However, Intell-A-Check and Goldman & Steinberg are separately incorporated in New Jersey. Neither Intell-A-Check nor Goldman & Steinberg is licensed to do business in Maryland, and neither company has any employees or clients in Maryland.
 
 
 4
 On August 12, 1993, AutoScribe's vice-president for marketing, Roy Fales, asked his wife, Judy Fales, to call Intell-A-Check in Kearny, New Jersey. During the telephone conversation, Judy Fales requested information about the Intell-A-Check software from Kevin Fahey, president of Goldman & Steinberg and Intell-A-Check. That same day, Fahey sent a facsimile of a brochure describing the Intell-A-Check software to Judy Fales. Fahey also sent a package to Judy Fales containing, among other things, his business card, information about Goldman & Steinberg's services, information about the Intell-A-Check software, and a demonstration copy of the computer pro gram. Fahey telephoned Judy Fales on three subsequent occasions to solicit her business.[1]
 
 
 5
 The only additional alleged contacts by Intell-A-Check or Goldman & Steinberg with Maryland involve Goldman & Steinberg's collection of debts on behalf of its clients, none of whom were Marylanders. In attempting to collect these debts, Goldman & Steinberg sent approximately 61,000 dunning letters last year, of which 197 or 0.3% were sent to individuals or corporations in Maryland.
 
 
 6
 On October 4, 1993, AutoScribe filed this action in the United States District Court for the District of Maryland. The complaint, as later amended, alleged that Goldman & Steinberg, Intell-A-Check, and Goldman & Steinberg doing business as Intell-A-Check, infringed AutoScribe's copyright to the Auto-Pay software, breached the licensing agreement, and misappropriated trade secrets belonging to AutoScribe. Specifically, AutoScribe alleged that the defendants violated the licensing agreement and the "copyright laws" by having "substantially copied the Auto-Pay software and/or created a derivative work based thereon, which they now market under the name Intell-A-Check! check writing software." On December 2, 1993, the defendants filed a motion to dismiss the complaint alleging insufficient service of process, lack of personal jurisdiction, and improper venue. Each side filed affidavits in support of its position. Following a hearing, the district court issued an oral opinion granting the motion to dismiss for lack of personal jurisdiction.
 
 II.
 
 7
 Although none of the parties has attached any importance to the fact, it is of some significance that subject-matter jurisdiction in this case is premised not solely on diversity of citizenship. AutoScribe, asserting a violation of its copyright, also properly relies on 28 U.S.C. Sec. 1338 as a basis for subject-matter jurisdiction. Until recently, the
 
 
 8
 Supreme Court had not decided a personal jurisdiction question in a nondiversity case. Indeed, the "minimum contacts" doctrine originated in a line of cases that dealt only with the jurisdictional powers of state courts. 4 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure Sec. 1067.1 at 306 (2d ed. 1987 & Supp.1994). The doctrine, of course, spread to the federal courts in diversity cases, but the anomaly of federal courts when adjudicating federally created rights being bound by limitations "developed under the Fourteenth Amendment," which by its own terms only applies to the states, led a number of federal courts to adopt a "national contacts" standard in federal question cases. Id. at 310.
 
 
 9
 The Supreme Court has never considered the question, but we, like several of our sister circuits, have held a "national contacts" standard applicable when federal law authorizes nationwide service of process. See Hogue v. Milodon Engineering, Inc., 736 F.2d 989, 991 (4th Cir.1984) (nationwide service under Bankruptcy Rule 704) ("Where Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with [Fifth Amendment] due process, the service of process is sufficient to establish jurisdiction of the federal court over the person of the defendant").
 
 
 10
 Where no federal law authorizes nationwide service, the circuits have been divided as to whether a "national contacts" standard is applicable, and, if so, what the standard should be. See Wright & Miller, Sec. 1067 at 312-332, and cases cited therein. The Supreme Court addressed the question in Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97 (1987). Although it is not entirely clear, the Court seems to have recognized that the applicable constitutional provision limiting a federal court's exercise of personal jurisdiction in federal question cases is not the Fourteenth Amendment, but the Fifth Amendment.[2] The Omni Court clearly concluded, however, that the Due Process Clause was not the only limit on a federal court's in personam jurisdiction in such cases. Rather, it held that when there is no provision authorizing nationwide service, federal courts must also follow Rule 4 of the Federal Rules of Civil Procedure, which limits a court's exercise of personal jurisdiction to persons who can be reached by the forum state's long-arm statute. Id. at 108.
 
 
 11
 In Maryland, as in many other states, at least portions of the state's long-arm statute are intended to be coterminous with the reach of the Due Process Clause of the Fourteenth Amendment. See, e.g., Camelback Ski Corp. v. Behning, 513 A.2d 874, 876 (Md.1986), vacated, 480 U.S. 901 (1987), aff'd, 539 A.2d 1187, cert. denied, 488 U.S. 849 (1988). Accordingly, the end result of Omni is to require federal courts based in such states to apply in federal question cases in which there is no provision for nationwide service an in personam jurisdiction test very similar to that used in diversity cases.
 
 
 12
 As in diversity cases, a court sitting pursuant to federal question jurisdiction must engage in a two-step analysis. The first step is identical to that in diversity cases--the court must determine whether authorization for service of process is established under the state's long-arm statute and, in states like Maryland, this inquiry will focus on whether the due process requirements of the Fourteenth Amendment are satisfied. Compare Omni, 484 U.S. at 108, with English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir.1990). If jurisdiction is proper under the State's long-arm statute, the second step, again as in diversity cases, is to determine whether the exercise of personal jurisdiction complies with the due process requirements of fair play and substantial justice. While there is some uncertainty as to the proper application of this second step, Omni suggests that in federal question cases, it is the Due Process Clause of the Fifth Amendment that governs this second step, rather than the Due Process Clause of the Fourteenth Amendment, which controls in the second step in diversity cases. 484 U.S. at 102-103. See also Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1560 n. 1 (Fed. Cir.), cert. dismissed, --- U.S. ----, 115 S.Ct. 18 (1994); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1389 n. 2 (8th Cir.1991); Max Daetwyler Corp. v. Meyer, 762 F.2d 290, 293 (3rd Cir.), cert. denied, 474 U.S. 980 (1985); Honeywell, Inc. v. Metz Apparatewerke, 509 F.2d 1137, 1143 (7th Cir.1975).
 
 
 13
 In any event, the present controversy can be totally resolved by considering the first step. Accordingly, we have no reason to consider the differences, if any, required by application of the Fifth, rather than Fourteenth, Amendment in the second step of the analysis. We simply note that the Supreme Court has expressly declined to determine whether a defendant's aggregate national contacts are in any way relevant in a federal question case when there is no provision for nationwide service of process. See Omni, 484 U.S. at 102 n. 5.
 
 III.
 
 14
 AutoScribe bears the burden of proving that the defendants are subject to the personal jurisdiction of the Maryland courts. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993). However, since the district court dismissed the case prior to trial without an evidentiary hearing, AutoScribe need only have demonstrated a prima facie case of personal jurisdiction. Id. In determining whether AutoScribe had established such a prima facie case, the district court was required to "draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Id. Although we review the district court's legal conclusions de novo, its findings of fact are accepted unless clearly erroneous. Id.
 
 
 15
 AutoScribe asserts that the defendants are subject to personal jurisdiction in Maryland pursuant to Sec. 6-103(b)(1) and (b)(4) of the Maryland long-arm statute.[3] Both of these provisions have been held to "expand the exercise of personal jurisdiction to the limits of the due process clause." Mohamed v. Michael, 370 A.2d 551, 553 (Md.1977) (interpreting Sec. 6-103(b)(1)); Camelback, 513 A.2d at 876 (interpreting Sec. 6-103(b)(4)). Thus, they are satisfied whenever the constitutional requirements are met.
 
 
 16
 It is well settled that the Due Process Clause of the Fourteenth Amendment no longer requires that a defendant be physically present in the state in order for the state to exercise jurisdiction over the defendant. See Hanson v. Denckla, 357 U.S. 235, 250-251 (1958); Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945 (4th Cir.1994). Nonetheless, it is equally well established that a defendant must have certain "minimum contacts" with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).
 
 
 17
 In defining the "minimum contacts" needed to establish personal jurisdiction, the Supreme Court has required that the defendant "purposely avail[ ] itself of the privilege of conducting activities within the forum State...." Hanson, 357 U.S. at 253. In other words, the actions initiated by the defendant must be "purposefully directed" at the forum state, creating a " 'substantial connection' " with that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-476 (1985) (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)). The minimum contacts analysis embodies the basic notion that the defendant's own actions must be such as to put it on notice of the possibility of defending itself in the forum state. Thus, the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). As we recently held, "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." Lesnick, 35 F.3d at 945.
 
 
 18
 Personal jurisdiction may be founded on either of two theories: general or specific jurisdiction. When "a suit does not arise out of the defendant's activities in the forum state, the court must exercise general jurisdiction and the requisite minimum contacts between the defendant and the forum state are fairly extensive." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir.1993) (internal quotations omitted). Indeed, those contacts must be "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Camelback, 513 A.2d at 878-879. In contrast, when a suit arises out of the defendant's activities with the forum state then a court may exercise specific jurisdiction. Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir.1989); Helicopteros, 446 U.S. at 414 n. 8; Camelback, 513 A.2d at 878-879. In such a case, the contacts need not be so extensive, but "the'fair warning' requirement inherent in due process still demands that the defendant 'purposely directed' its activities at the forum." Federal Ins., 886 F.2d at 660 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). AutoScribe has conceded that there are not sufficient "continuous and systematic" contacts to subject the defendants to the general personal jurisdiction of the Maryland courts. Thus, the sole inquiry here is limited to whether there are sufficient contacts to justify the exercise of specific personal jurisdiction.
 
 IV.
 
 19
 There are three sorts of "contacts" upon which AutoScribe relies in asserting that by their own "purposefully directed" actions, the defendants[4] created a "substantial connection" with Maryland. The first group of contacts involves the original execution of the contract. AutoScribe argues that Goldman & Steinberg, a New Jersey corporation without Maryland employees or clients and which is not even licensed to do business in Maryland, by entering into this contract to purchase a license for software with a Maryland corporation, remitting payment to Maryland for the software, and telephoning to Maryland for assistance in using the software, created a substantial connection with Maryland. Despite AutoScribe's arguments, we find nothing compelling about the licensing agreement or the subsequent telephone calls seeking assistance. The agreement was a one-page preprinted form that prompted no negotiations between Goldman & Steinberg and AutoScribe. Moreover, after AutoScribe mailed the agreement to Goldman & Steinberg for signature, Goldman & Steinberg executed the document in New Jersey. Thus, the agreement was actually consummated in New Jersey. Furthermore, it is clear that Goldman & Steinberg's telephone calls for technical support were not "purposefully directed" toward the State of Maryland. The only purpose of the calls was to correct problems that Goldman & Steinberg was experiencing with the software. These calls were directed at Maryland only because AutoScribe, the sole company able to respond to these problems, happened to be located in Maryland. See Keeton, 465 U.S. at 774.
 
 
 20
 Thus, the contacts relating to the execution of the contract simply do not constitute purposeful acts directed by the defendants to the State of Maryland sufficient to establish personal jurisdiction over them. Compare Ellicott Machine Corp., 995 F.2d 476-478 (even though contract was made in Maryland, after purposeful initiation by the foreign defendant and several weeks of negotiations involving letters, faxes, and telephone calls to Maryland by the defendant, there were still insufficient contacts to satisfy Maryland long-arm statute). See also Stuart v. Spademan, 772 F.2d 1185, 1194 (5th Cir.1985) (assignment of patent by plaintiffs to defendant accompanied by prior and subsequent exchanges by mail and telephone did not constitute purposeful availment by defendant of the laws of plaintiff's state); Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1029 (5th Cir.1983) (defendant that negotiated contract by telex, telephone and letter with plaintiff in forum state, then purchased goods in forum state, mailed payment to forum state, and twice travelled to forum state to resolve contract dispute did not purposefully avail itself of the laws of the forum state), cert. denied, 466 U.S. 962 (1984); Jadair, Inc. v. Walt Keeler Co., 679 F.2d 131, 134 (7th Cir.) (telephone calls and letters directed to seller in Wisconsin by out-of-state purchaser in effort to have machine repaired insufficient to establish personal jurisdiction over purchaser in Wisconsin), cert. denied, 459 U.S. 944 (1982).
 
 
 21
 The second group of contacts relied on by AutoScribe involves the asserted solicitation of business by both defendants in Maryland. AutoScribe asserts that the defendants "attempted to sell respectively their ... software and debt collection services to Mr. and Mrs. Fales in Maryland" and "placed follow-up telephone calls and forwarded advertising literature to [the Faleses] in Maryland."[5] The essential difficulty with using these contacts as a foundation for personal jurisdiction over the defendants is that the contacts were not initiated by the defendants. The only reason the defendants ever attempted to sell anything to Mr. and Mrs. Fales, AutoScribe's marketing vicepresident and his wife, is because the Faleses originally telephoned the defendants, on behalf of AutoScribe, requesting information about the Intell-A-Check software.
 
 
 22
 As the district court noted, because AutoScribe initiated these contacts, the solicitations do not evidence purposeful activity by the defendants toward the State of Maryland. See Hanson, 357 U.S. at 253. The plaintiff, by its agents' telephone calls, cannot lure the defendants into contacts with the forum state for the purpose of establishing personal jurisdiction over them. See Burger King, 471 U.S. at 475 ("actions by the defendant himself " are necessary to "create a 'substantial connection' with the forum State" (quoting McGee, 355 --- U.S. at 223)); Federal Ins., 886 F.2d at 658 (sales by defendant in foreign state were "initiated by" others and thus did not constitute purposeful availment of "privilege of conducting business" in forum state); Batton v. Tennessee Farmers Mut. Ins. Co., 736 P.2d 2, 8 (Ariz.1987) (en banc ) ("requisite minimum contacts are not established when the plaintiff's action 'requires the defendant to send communications into th[e] forum' " (emphasis in original) (quoting Hunt v. Erie Ins. Group, 728 F.2d 1244, 1248 (9th Cir.1984))).
 
 
 23
 Nor, contrary to AutoScribe's vigorous arguments, does the defendants' attempt to sell their services in Maryland to Mr. and Mrs. Fales, at the request of the Faleses, constitute a basis for assertion of jurisdiction in Maryland on a stream of commerce theory. The sole support for this argument cited by AutoScribe is Beverly Hills Fan, supra. In that case, the plaintiff established that at least 52 patent infringing fans made or distributed by the foreign defendants were available for sale at various retail outlets in the forum state. The court found that foreign defendants "intentionally established" a "distribution channel" and "that defendants knew, or reasonably could have foreseen, that a termination point of the channel was" the forum state. 21 F.3d at 1564. It is not clear that this Court would as readily adopt a stream of commerce theory even on the facts of Beverly Hills Fan. See Federal Ins. Co., 856 F.2d at 658-660. In any event, in this case there is simply no evidence of any intentional establishment of a "distribution channel" in Maryland or of a true "stream of commerce."
 
 
 24
 The third and final group of contacts are the 197 debt collection letters that Goldman & Steinberg, on behalf of out-of-state customers, mailed to Maryland last year. Although AutoScribe argues that the recipients of these dunning letters would subsequently contact Goldman & Steinberg, and thereby potentially cause Goldman & Steinberg to use the allegedly infringing Intell-A-Check software in collecting bills in Maryland, AutoScribe made no such allegation in its complaint nor offered any proof of this in its affidavits. The district court ultimately held that these letters were not relevant to establishing personal jurisdiction in this case.
 
 
 25
 Whether that holding is regarded as a factual finding or a legal conclusion, it is not error. First, AutoScribe has conceded that there is no basis for general personal jurisdiction here and, therefore, the letters cannot be used to establish general personal jurisdiction.[6] Nor do the debt collection letters provide a basis for assertion of specific personal jurisdiction. This is so because there was no allegation in the complaint, nor was there any evidence, that AutoScribe's causes of action arose out of, or even were related to, these letters. See Barone v. Rich Bros. Interstate Display Fireworks, Co., 25 F.3d 610, 615 n. 5 (8th Cir.) (contacts "unrelated to the dispute" were not considered because they were "irrelevant to the consideration of whether the forum state could exercise specific jurisdiction over the defendant"), cert. denied sub nom. Hosoya Fireworks Co. v. Barone, --- U.S. ----, 115 S.Ct. 359 (1994); United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 43 n. 9 (1st Cir.1993) (when assessing specific personal jurisdiction, a court limits its inquiry to forumrelated contacts).
 
 
 26
 Whether considered individually or collectively, defendants' contacts with Maryland simply do not constitute the requisite purposeful activity establishing minimum contacts with the State sufficient for the invocation of personal jurisdiction under the Maryland long-arm statute. The cases upon which AutoScribe relies to support its claim to the contrary are inapposite. See Burger King, 471 U.S. at 462, 465-467 (defendant made single franchising agreement in forum state, but preceding and following the agreement there were extensive telephone negotiations with plaintiff in forum state; in connection with the agreement, defendant also purchased equipment in forum state and paid monthly fees to forum state; in addition, franchising agreement provided that franchise relationship was established in forum state and to be governed by the law of that state); McGee, 355 U.S. at 221-222 (principal contacts were annual life insurance contracts but contracts were made in the forum state and involved a continuing obligation by the out-of-state defendant insurer to plaintiff in forum state); Prince v. Illien Adoptions Int'l Ltd., 806 F.Supp. 1225 (D. Md.1992) (principal contact was single contract but that contract was executed in Maryland after solicitation by defendants in Maryland and telephone and mail negotiations by defendants with plaintiffs in Maryland); Snyder v. Hampton Industries, Inc., 521 F.Supp. 130, 134-135 (D. Md.1981) (in addition to contracting with Maryland plaintiff for thirty years, defendant did over $1 million annual business in Maryland, sent promotional literature to Maryland, and stated in its financial reports that it maintained a "regional sales office in Baltimore"), aff'd, 758 F.2d 649 (4th Cir.1985); Selph v. Radtke, 545 A.2d 111, 112-113 (Md. Ct. Spec.App.) (agreement involved purchase of real property located in Maryland and continuing obligation by out-of-state defendant to Maryland resident), cert. denied, 550 A.2d 381 (Md.1988).
 
 
 27
 Indeed, close scrutiny reveals that the only contacts initiated by the defendants that arose out of AutoScribe's causes of action were those relating to the execution of the licensing agreement. Particularly in light of the fact that the licensing agreement was finally executed in New Jersey, this transaction between New Jersey and Maryland corporations cannot be the basis for subjecting the New Jersey corporation to the personal jurisdiction of the Maryland courts. See Stuart, 772 F.2d at 1194; see also Nicholas v. Buchanan, 806 F.2d 305, 307 (1st Cir.1986) (interstate mail and telephone communications alone insufficient to subject defendant to personal jurisdiction of forum state in breach of contract action), cert. denied, 481 U.S. 1071 (1987); Hydrokinetics, 700 F.2d at 1029; Scullin Steel v. National Ry. Utilization Corp., 676 F.2d 309, 314 (8th Cir.1982) (use of the telephone and mail are secondary factors insufficient alone to establish minimum contacts with forum state); Jadair, 679 F.2d at 134.
 
 
 28
 In addition to relying on the above discussed three groups of contacts, AutoScribe makes one additional argument as to why personal jurisdiction over the defendants is proper. AutoScribe asserts "there are important public policies, embodied in the federal intellectual property statutes" that favor assertion of in personam jurisdiction here. The only authority AutoScribe relies on in support of this argument is Beverly Hills Fan, a stream of commerce case that is, as we have held, readily distinguishable from the case at hand.[7] However, we are not unsympathetic to this argument. Our holding here means that a federal court lacks jurisdiction to determine a case involving the assertion of a property right created by federal law simply because service of process is not available under a state statute. Prior to Omni, some courts found "national contacts" alone supplied the basis for personal jurisdiction in such cases. See, e.g., Horne v. Adolph Coors Co., 684 F.2d 255, 259 (3d Cir.1982). Omni, however, clearly forecloses this theory; it requires that service of process be pursuant to either a federal law providing for nationwide service or Rule 4. See 484 U.S. at 108.
 
 
 29
 Perhaps the concern for preserving the rights guaranteed by federal law to the holders of intellectual property constitutes a good policy reason for providing for nationwide service of process in copyright and trademark cases; that, however, is a matter to be addressed by the legislative branch. In the absence of such a provision, the district court's power to exercise in personam jurisdiction is limited by Rule 4 and by the Maryland long-arm statute, which Rule 4 incorporates by reference. See Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir.1993) (because "no applicable federal statute" provides for service of process, California's long-arm statute governs in a copyright infringement action); Max Daetwyler, 762 F.2d at 297 (in "absence of a governing federal statute," Pennsylvania's long-arm statute governs in patent action).
 
 V.
 
 30
 AutoScribe has failed to meet its burden in this case. It has failed to make any showing that the defendants engaged in actions purposefully directed at Maryland, thereby creating a substantial connection with Maryland sufficient to establish a prima facie case of personal jurisdiction under the Maryland long-arm statute. The district court was correct in dismissing this action for lack of personal jurisdiction.
 
 AFFIRMED
 
 
 [1]
 On December 17, 1993, after AutoScribe's complaint had been filed, Roy Fales telephoned Goldman & Steinberg and spoke with Kevin Fahey. Roy Fales asked Fahey about the Intell-A-Check program and Fahey agreed to send him information about Intell-A-Check and Goldman & Steinberg
 
 
 [2]
 The Omni court never expressly so held. As the authorities note, however, the "Court's assumption throughout its opinion was that the applicable constitutional provision was the Due Process Clause of the Fifth Amendment." Wright & Miller, Sec. 1067.1 at 34 (Supp.1994). See, e.g., Omni, 484 U.S. at 102-103
 
 
 [3]
 The Maryland Long Arm Statute provides, in pertinent part:
 (a) Condition. If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section, and
 (b) In general. A court may exercise personal jurisdiction over a person, who directly or by an agent:
 (1) Transacts any business or performs any character of work or service in the State;
 (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.
 Md. Courts and Judicial Proceedings Code Ann. Sec. 6-103 (Michie 1989).
 
 
 [4]
 We note that Goldman & Steinberg and Intell-A-Check are separately incorporated in New Jersey and AutoScribe has pointed to nothing that would lead a court to pierce the corporate veil or treat them as a single entity. See Mylan Labs, 2 F.3d at 61-62. Accordingly, the contacts of each defendant are most properly analyzed separately; if that were done here, of course, each individually has even fewer contacts with Maryland. However, because it makes no difference to the resolution of this case, for convenience we treat the contacts of the two defendants together
 
 
 [5]
 AutoScribe also argues that Goldman & Steinberg and Intell-A-Check publicly advertised in Maryland and attaches to its reply brief an advertisement for the Intell-A-Check software purportedly from a publication mailed to Maryland. The affect of such a small amount of advertising is unclear. See Max Daetwyler, 762 F.2d at 293 (advertisements only constitute a sufficient basis for specific jurisdiction when they amount to a sustained promotional campaign directed to the residents of the forum state). In any event, the argument was never properly raised before the court below. The record before the district court contained no evidence that any defendant advertised in Maryland, nor did AutoScribe allege this in its complaint. For these reasons, we decline to consider this advertisement in our assessment of the defendants' Maryland contacts. See Mylan Labs, 2 F.3d at 60, n. 2
 
 
 [6]
 Even if AutoScribe had not conceded that there is no basis for general personal jurisdiction in this case, it is clear that the letters do not support its assertion. The 197 letters constituted only 0.3% of Goldman & Steinberg's debt collection business and there is no evidence that through these dunning letters Goldman & Steinberg ever realized any revenue from Maryland
 
 
 [7]
 Other courts have also considered whether a stream of commerce theory justifies assertion of jurisdiction in federal intellectual property cases. Some have held there was such a "stream of commerce" justifying assertion of personal jurisdiction. See, e.g., Dakota Indus., 946 F.2d at 1391; Honeywell, 509 F.2d at 1144, and others have held there was not. See, e.g., Land-O-Nod v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1341 (8th Cir.1983). In all of these cases, however, there was far more evidence of "intentional establishment" of a true "stream" of commerce than is present in the case at hand